F. M. WILLIAMS v. SUPREME CONCLAVE ·IMPROVED ORDER OF HEPTASOPHS.

(Filed 22 December, 1916.)

**Insurance—Assessments—Classification of Members—Appeal and Error— Judgments of Lower Court.**

The plaintiff became a member of defendant insurance order upon a certain premium rate, with a right of assessment of all the members upon a ratable plan to pay losses out of a common fund. This plan was changed by the company, placing plaintiff in a class with those who had insured before a certain date, and those thereafter in a separate class. The judgment of the lower court permitting plaintiff to recover is affirmed.

HOKE, J., dissenting; ALLEN and BROWN, JJ., not sitting.

APPEAL by defendant from *Lane, J.,* at July Term, 1916, of CATAWBA.

*Jones & Williams for plaintiff.*
*Olin Bryan and W. Feimster for defendant.*

CLARK, C. J. On 3 January, 1899, the defendant issued to the plaintiff an insurance policy known as a "Second Rate Benefit Certificate," by the terms of which the defendant in return for payments to be made by plaintiff, and the performance of certain stipulations, agreed to pay to the wife and children of the plaintiff at his death the sum of $2,000. At that time the plaintiff was 44 years of age. The policy was obtained in this State and by the solicitation of the defendant's agent. At the time the agent gave to the plaintiff a pamphlet in which, among other things, it was stated: "As evidence of its wise and economical management, strict medical examinations and

the careful selection of its membership, it has been able to maintain, in the twentieth year of its age, an average of nine assessments a year." In the body of the pamphlet was the table of rates for insurance which at plaintiff's age at the time of his taking out this policy was "$2.04 per month for $2,000 of insurance," and underneath the table was the following sentence: "The fund is raised by assessments levied upon each member, according to a regular graded scale, *and the amount paid by the applicant remains his assessment for life.* Assessments may be called as often as they are required."

Under the constitution and by-laws in force at the issuance of the certificate to the plaintiff the *entire membership* of the order were to pay assessments sufficient to pay death losses, the same to be apportioned among *all the members,* according to the age of each member at the date of his entrance, which for plaintiff was $2.04, unless the member should change his rate, for instance, from a $2,000 rate to $3,000, as is shown in the pamphlet. The defendant admits that the plaintiff was accepted at the table of rates in force at that time. The receipts from all the members were to go into a common fund from which death benefits were to be paid, each member paying his proportionate share into the fund, assessments being made at stated intervals and for stated amounts, with the privilege of levying extra assessments if necessary, but when made the assessment should be on all members alike, and all death losses were to be paid from a single fund.

In 1901 the amount of assessments was increased and the right to levy extra assessments abolished. The assessments were again raised in 1909, but the rate continued to be based substantially on the age at entry and were laid upon all members, creating a common fund to which all contributed and from which each was to draw in event of death. The plaintiff submitted and remained a member till 1 December, 1915, at which time he was forced out by the change in the contract by the defendant, which constitutes the ground of this action. The change was made without notice to the plaintiff, and the defendant attempted to apply the provisions to the plaintiff's contract of insurance against his will. The plaintiff ceased to make payments and was suspended, and cannot now, under the by-laws, be reinstated.

These changes which were adopted by resolution provided, in effect, that all persons who joined the order subsequent to 1 January, 1914, were placed in a separate class from those who joined prior to that date, and their contributions were put into a separate fund, and none of their contributions were to be used to pay death losses occurring among those joining prior to 1 January, 1914; but those joining prior to that date were placed in a separate class and were required to pay all death losses occurring in their class. No new members were per-

mitted to enter plaintiff's class and that class were not permitted to share in the contributions from members joining subsequent to 1 January, 1914.

Under this system the assessments upon the plaintiff became, of course, much higher than if the entire membership had continued to share in the burden of all the deaths, with the result that if the plaintiff was the longest liver in that class he would have to pay his own death loss, and in the meantime would as a member of a constantly dwindling class, have been required to pay higher and higher assessments on the death of each of his fellow members.

This result puts the plaintiff in exactly the same position as the plaintiff in *Strauss v. Life Assn.,* 126 N. C., 971; *s. c.,* 128 N. C., 465. The options offered really give the plaintiff no relief. If he had elected to accept any one of them he would have been in the same position as a new member coming into the order who had never held a policy of insurance. The value of his policy was completely destroyed and he would start anew. The plaintiff could not be required to accept the options offered which would destroy every right he had acquired under his policy and by virtue of his payments already made. The defendant having violated its contract with the plaintiff, he can stand upon his rights and recover the damages caused him by the breach of contract, under *Strauss' case, supra.*

If the plaintiff had accepted option 1 he would have to pay assessments at the rate of his attained age, while those joining subsequent to 1 January, 1914, would pay only at the age of their entry.

If he accepted options 2 or 3, the face value of his policy and the amount of his insurance were reduced, while no change was made in the amount of insurance of those who joined subsequent to 1 January, 1914. This was a discrimination against the plaintiff. Option 4 did not apply to him.

This is not a case of increase of assessments, but it is a discrimination between members. The certificate held by the plaintiff is a contract of insurance. Bacon Benefit Societies, secs. 51, 52; *Strauss v. Life Assn.,* 126 N. C., 971; *s. c.,* 128 N. C., 465; *Hill v. Life Assn., ib.,* 463; *Makely v. Legion of Honor,* 133 N. C., 367.

The certificate issued to the plaintiff is "deemed to have been made within this State and subject to our laws." Laws 1893, ch. 299, sec. 8; *Ins. Co. v. Edwards,* 124 N. C., 116; *Horton v. Ins. Co.,* 122 N. C., 498; *Williams v. Life Assn.,* 145 N. C., 128.

Our decisions above quoted settle the point in issue in favor of the plaintiff. In *Bragaw v. Supreme Lodge,* 128 N. C., 357, it is said: "It is not shown that the assured had any notice of or assented to this amendment. A provision that one should become a member subject

790 IN THE SUPREME COURT. [172

to the power of the corporation to change its by-laws cannot be construed into liberty to change at its will the contract of insurance it has made with each insurer. The company and the insured occupy entirely two different relations. In one it is a company and the other party one of its members. In that relation, the by-laws or constitution can be amended at will of the majority, if done in the legal and prescribed mode. The other relation is that of insurer and insured, and this contract relation cannot be altered save by the consent of both parties, and the party alleging that the consent was given must show it."

"A mere general consent that the constitution and by-laws may be amended apply only to such reasonable regulation as may be within the scope of its original design." *Strauss v. Life Assn.,* 126 N. C., 971. We do not think that the alternative offered the plaintiff in this case is reasonable, for the reasons already given. The other exceptions do not require discussion.

No error.

HOKE, J., dissenting.
BROWN and ALLEN, JJ., not sitting.