WILLIAM MARSHALL WILSON v. SUPREME CONCLAVE, IMPROVED ORDER OF HEPTASOPHS.

(Filed 28 November, 1917.)

1. **Insurance—Policies—Contracts—Vested Rights—Constitutional Law.**

A general consent of a policy-holder in an assessment fraternal benefit society that the company may thereafter alter or amend its constitution or by-laws does not authorize the society to make such changes therein as will impair the vested right of its members and policy-holders arising under their contract of insurance with the company.

2. **Same—Fraternal Orders—Assessments.**

Where a member of a fraternal benefit society has taken out a life insurance policy therein under a contract that its members shall be assessed according to age, the society may not thereafter so change its plan of insurance as to divide the members prior to a certain date into a class by themselves, leaving them to take care of their losses among themselves by

ever-increasing assessments in the progress of time, or at their option come
in as new members to be assessed according to their increased age, and
thus lose their vested rights under their policy contracts.

3. **Fraternal Orders—Amendments — Charter—By-Laws—Suspending Member.**

Where fraternal benefit insurance societies are required to file certified
copy of changes made in their constitution and by-laws with the Insurance
Commission within 90 days, and fail to do so, they may not, while thus
in default, suspend a member for noncompliance therewith.

4. **Insurance—Fraternal Orders—Policies—Lex Loci.**

Where a member of a fraternal benefit society, incorporated in another
State, takes a life insurance policy therein through a subordinate lodge in
this State, the policy contract is a North Carolina contract, subject to the
laws of this State, which will not permit such change in the plan of insur-
ance as will impair rights theretofore vested under the policy, whether
such may be lawful in such other State or otherwise.

5. **Insurance — Commerce—Policies—Contracts—Lex Loci—Presumptions—
Statutes.**

Insurance is not the subject of interstate commerce, and the presumption
is that the law of the place at which a contract of insurance is made shall
govern the rights of the parties, and the statute law at the time thereof
applies, and not that which is later enacted.

6. **Insurance—Fraternal Orders—Contracts—Policies—Vested Rights—Can-
cellation—Damages.**

Where a fraternal benefit society has issued a policy of life insurance to
a member, and has changed its plan of business so as to impair the vested
rights of the insured under his contract, and refuses to accept the proper
premium, and declares the policy void, the insured may maintain his action
to recover of the insurer the principal sum of money he has paid on his
policy, and simple interest thereon.

APPEAL by defendant from *Cline, J.*, at February Term, 1917, of
MECKLENBURG.

The defendant, a fraternal benefit society, incorporated in Baltimore,
Md., organized in Charlotte, N. C., a subordinate lodge, in which the
plaintiff became a member 3 September, 1896, and took out an insurance
policy in the sum of $5,000. He paid the fixed monthly dues of $8.10
each month, and his lodge dues from time to time, until 1 July, 1901,
when the defendant raised the rate of the monthly assessments on the
entire membership alike, as of the age when each member joined, which
caused the monthly dues of the plaintiff to be increased to $13.10, which
he paid from time to time, till 1 January, 1910; then the defendant
again raised its due for the entire membership, and upon all members
alike, as of the age when they joined, and this increased the plaintiff's
monthly dues to $18.47; which he paid from that date to and including
January, 1916.

The defendant, on 28 October, 1915, held a special session of its Supreme Conclave at Harrisburg, Pa., and divided its members into two classes—"A" and "B." Class B was to be composed of members who joined prior to 1 January, 1914, and all joining after that date were to constitute Class A. It was provided that the members of Class A should pay for their insurance on a fixed basis, based upon their then attained age, upon the National Fraternal Congress rate; but the members of Class B were to pay for their insurance, or protection, also at their then attained age and on what was known as the "current cost plan." The laws then in force in this State and in Maryland as to fraternal benefit societies required such society making a change in its constitution or by-laws to furnish a certified copy of said changes to the Insurance Commissioner of Maryland and also to the Insurance Commissioner of North Carolina, within 90 days after the adoption of said change. Laws 1913, chap. 89, sec. 19, of this State. The defendant filed an uncertified copy with the Insurance Commissioner of Maryland on 3 March, 1916, and did not file a certified copy with the Insurance Commissioner of this State till 8 March, 1916, both of which acts were beyond the 90-days period prescribed; and while the defendant was thus in default, it suspended the plaintiff from membership.

The plaintiff did not consent to the classification by the defendant into Classes A and B, as above set out, but on the contrary tendered his dues for January, 1916, under the rules and regulations in force prior to 28 October, 1915, and disputed the validity of the proposed classification.

The defendant accepted the January dues, 1916, on the conditions contained in the written instrument accompanying said payment. The defendant notified the plaintiff in February, 1916, that the defendant had placed the plaintiff in Class B, and that as a member of said class he was required to pay for February an extra assessment equal to the regular assessment for said month, and that if said regular and assessment were not paid before the last day of February that all plaintiff's rights under his contract would be *ipso facto* forfeited.

After receiving said notice, plaintiff paid no further dues, and began this suit 21 March, 1916, alleging in his complaint that the attempted classification by the defendant of its members into Class A and Class B had not been properly made, and if properly made, it was unlawful, in that it was a discrimination against the old members of the order, because it attempted to rate them at their then attained age, and also attempted to put them in a class by themselves, to which new members could not be admitted, thus withdrawing all new blood from that class and forcing them to carry their own insurance at their then attained age, which rate would grow heavier with the passage of time, and would finally force the survivor of said old members to pay his own death claim.

The answer admits the allegations above set forth, except that it denies the unlawfulness of the classification, and alleges that they were authorized by a change in the constitution and laws of the defendant, adopted at Harrisburg, Pa., 28-30 October, 1915, and pleaded that full faith and credit must be given to the statutes of Maryland under which said changes were made.

The court charged the jury that said classification of members by the defendant corporation was unlawful because in violation of the contract rights of the plaintiff, and that the statute of Maryland, permitting the defendant to amend its charter, could not, and did not, authorize it to violate the contract rights of the plaintiff.

Verdict and judgment for plaintiff. Appeal by defendant.

*T. A. Adams for plaintiff.*
*A. C. Davis, Olin Bryan, and C. W. Tillett, Jr., for defendant.*

CLARK, C. J. The defendant's counsel, in his argument, admitted that this same question had been decided against it in *Williams v. Heptasophs* (this defendant), 172 N. C., 787, and he asked this Court to review and reverse what was held in that case. Indeed, this case is even stronger in some respects for the plaintiff than in the *Williams case,* and we think that case was rightly decided. In that case it was said that by virtue of the resolutions adopted 29 October, 1915, which put all the members who joined prior to 1 January, 1914, in a separate class and required them to pay all death losses occurring in their class, the result would be that the assessments upon the plaintiff would become, of course, much higher than if the entire membership had continued to share in the burden of all the deaths; and consequently, if the plaintiff should be "the longest liver in that class, he would have to pay his own death loss, and in the meantime would, as a member of a constantly dwindling class, be required to pay higher and higher assessments on the death of each of his fellow-members."

In that case we further considered the options set before the plaintiff, and pointed out that if he elected to accept any one of them he would be in the same condition of a new member coming into the order who had never held the policy of insurance, for the value of his policy would be completely destroyed. The plaintiff, it appears, had already paid in nearly $3,200, which, with the compound interest thereon, and deducting the cost of operating the company, should already be more than enough to pay the $5,000 policy. To require the plaintiff to throw all this away and start anew, relying upon assessments at his present attained age for payment of his policy out of a class receiving no new accessions, is simply to put him into a *cul de sac,* from which there is no exit but with loss.

The earnest counsel for the defendant insisted that the company was in straits; that it owed $90,000,000 of liabilities and had only $25,000 cash in its treasury. This is a bad result, and whether due to a faulty plan of operation inherent in the method adopted, or to mismanagement, or to unforeseen losses, we do not know. But it does not affect the fact that the new plan proposed is in entire derogation of the contract rights of plaintiff. No regulation or amendment to the charter was valid which would have this result, and no statute of Maryland or of any other State could empower the defendant to violate its obligation to the plaintiff.

Though a member of a beneficial society may be bound by after-adopted by-laws or changes in its constitution, this is subject to the proviso that the society cannot thereby impair the contract rights of the member as the owner of the policy, which is a certificate of indebtedness issued by the company to the member.

In this case, as in *Bragaw v. Supreme Lodge,* 128 N. C., 357, it is not shown that the plaintiff had any notice of or assented to this amendment; on the contrary, he avowed his dissent when informed of its passage. In *Bragaw's case* we said: "A provision that one should become a member, subject to the power of the corporation to change its by-laws, cannot be construed into liberty to change at its will the contract of insurance it has made with each insurer. The company and the insured occupy two entirely different relations. In one it is a company, and the other party one of its members. In that relation the by-laws or constitution can be amended at will of the majority, if done in the legal and prescribed mode. The other relation is that of insurer and insured, and this contract relation cannot be altered save by the consent of both parties, and the party alleging that the consent was given must show it."

"A mere general consent that the constitution and by-laws may be amended applies only to such reasonable regulation as may be within the scope of its original design." *Strauss v. Life Assn.,* 126 N. C., 971.

We are of opinion that the statute of Maryland did not authorize the classification adopted, and that if it had, it would be invalid because in violation of the contract rights of the plaintiff.

We further think that this was a North Carolina contract and is governed by the statutes of this State (*Knights of Pythias v. Meyer,* 198 U. S., 507; *Equitable Soc. v. Pettus,* 140 U. S., 226; *Ins. Co. v. McCue,* 223 U. S., 234), and there is no statute of this State which authorized this radical change of the status of the plaintiff.

It has been often held that insurance is not interstate commerce (*Ins. Co. v. Craven,* 178 U. S., 389), and the presumption is that the law of the place at which a contract is made shall govern the rights of the parties. *Ins. Co. v. Cohen,* 179 U. S., 262. The plaintiff's contract of insurance was written in 1896, and the passage of chapter 54, Laws 1899,

could not change the tenor of the contract made with the plaintiff prior to its passage; nor could it authorize the application to it of a Maryland statute. His contract is to be construed entirely in the light of the statutes in force in this State in 1896. The condition that the society is to be governed by the by-laws enacted by the Supreme Conclave from time to time has reference to the future regulations of the order which are reasonable in their terms and which do not impair vested rights. *Strauss v. Life Assn.,* 126 N. C., 971; *S. c.,* 128 N. C., 465.

This Court has already held that this particular classification by this defendant is unlawful and invalid. *Williams v. Heptasophs,* 172 N. C., 987. This case is stronger for the plaintiff than that, because:

(1) In the *Williams case* the record did not show, as in this, that the defendant was in default in filing certified copies of its proposed amendments to its constitution and by-laws with the Insurance Commissioner of Maryland and of North Carolina.

(2) The plaintiff in this case was suspended by the defendant during the time that the defendant was in default in complying with the statutory regulations in regard to filing such amendments.

(3) The plaintiff in the *Williams case* tendered no payment under protest, or otherwise, after the proposed classification, while the plaintiff in this action tendered his January, 1916, dues under the terms and conditions specified in the written tender that it should be accepted "in accordance with the rate fixed by the by-laws prior to 28 October, 1915," and the payment was accepted, which was an acknowledgement that the classification was null and void as against this plaintiff, or at least a waiver of said classification as to him.

The defendant in raising the rate in 1901, in which the plaintiff acquiesced, furnished the plaintiff in July, 1901, a written statement as follows: "It makes no difference how long you have been a member, you need pay only the rate for the age you were when joining the order. You now have an order second to none, based upon sound business principles, appealing to all seeking good, safe protection at a minimum cost. You can now tell your friends what it will cost them each month, and thus benefit them and aid the order."

The defendant had the right to increase its rates, if necessary, laying them, as they did, at the increase in 1901 and again in 1910, upon all the members upon the basis of the age at which they became members; but it had no right to practically divide the membership into two, putting the plaintiff in Class B, into which no new members would be admitted from time to time. It is true there is an opportunity for the members of Class B to pass into Class A, but upon the condition that they shall be assessed at the attained age (which of plaintiff is now 75 years), for this is in direct violation of the terms upon which he entered the association.

An insurance company is like a river. The loss in volume by the outflow is constantly made good by accessions along the route, *i. e.,* by the interest accruing, and by the waters coming from above, *i. e.,* the payments by new members. While time depletes the current by death, it is adding to it from new sources; but when, as in this case, the company seeks to divide its members into classes, the older of which will receive no accessions, the current will soon run dry. It is true that this figure is more applicable to the standard companies than to a benefit association where the losses are paid by assessments upon death, but it is none the less true that when there is a class in which there are no new members to assess, that class must become smaller and smaller and the assessments larger and larger till they become unbearable. Certainly such division into classes is not within the contract made by this plaintiff, and upon breach of that contract he is entitled to recover back the principal money which he has paid in, with simple interest thereon. *Braswell v. Ins. Co.,* 75 N. C., 8, and citations in Anno. Ed.

It appears that the plaintiff has paid in principal money in the twenty years from 1896 to 1916 $3,149.31. He is now over 75 years of age and unable to obtain other insurance. The classification attempted to be enforced upon him is unlawful, arbitrary and discriminatory, as we have already held in Williams against this defendant, 172 N. C., 787. We hold that the contract under which the plaintiff claims is founded upon and governed solely by the laws of North Carolina, and that even if it were governed by the laws of Maryland, the classification complained of is not warranted by the laws of that State; and if it were they could not impair the obligation of the contract which the defendant entered into with this plaintiff, and the judgment is in all respects affirmed.

No error.

ALLEN, J., not sitting.