WALTER BRAY v. NORTH CAROLINA POLICE
VOLUNTARY BENEFIT ASSOCIATION (AN UNINCORPORATED ASSOCIATION.)

(Filed 11 January 1963.)

1. **Associations § 3—**

   The relationship between a member and a beneficial association in regard to benefits is that of insured and insurer, and the constitution, by-laws, rules and regulations of the association operate as a contract in regard to such benefits and are to be construed in the light most favorable to members to effecuate the purposes of the association and the intent of the parties, and against forfeiture.

2. **Same—**

   The rules of defendent beneficial association provided that in order to be entitled to retirement benefits a member must have had twenty years service, the last ten of which must have been continuous, and that no

member should receive retirement benefits until a specified date five years subsequent to its organization. Plaintiff met all of the conditions for benefits upon his retirement prior to the date specified. *Held:* Plaintiff was not required to have had continuous service for the ten years prior to the date specified, since the rules do not prevent a member from qualifying for such benefits before that date, but only that he should not receive benefits until then.

**3. Same—**

The rules of defendant beneficial association provided that when a member left the full-time service he should not be eligible for continued membership, and that only members could apply for and receive retirement benefits. Plaintiff appeared before the board of directors and advised the board of change of his status from that of a full-time employee effective a specified date, and the board permitted plaintiff to continue his membership, continued to carry him on its rolls, and continued to assesse him in the same manner as others in his classification. *Held:* The board waived forfeiture of the membership provision and acted in a manner inconsistent with an intention to enforce it.

**4. Insurance § 5—**

Insurer may waive provisions inserted in the contract for its benefit, and a course of action on its part, with knowledge of the existence of the grounds for forfeiture, which lead insurer honestly to believe that forfeiture would not be invoked, together with the continued payment of the premiums in reliance thereon, will estop insurer from insisting on the forfeiture.

**5. Associations § 3—**

An amendment to the rules of a beneficial association requiring that a notice of change in employment status should be given in writing can have no retroactive effect, and when the status of a member does not change subsequent to the adoption of the amendment, he cannot be under duty to give written notice.

**6. Same—**

Plaintiff member was entitled to have defendant association assess its members on a particular date for retirement benefits. *Held:* The Superior Court, in adjudging that plaintiff was entitled to the benefits, should order the association to forthwith assess all of its presently assessable members who were subject to the assessment on the date the assessment should have been made, and should order that ensuing annual assessment should include a sufficient sum to pay any deficiency arising from the non-assessability of such members because of death, retirement, or disability.

APPEAL by defendant from *Olive, J.,* July 23, 1962, Civil Term of RICHMOND.

This is an action to recover retirement benefits.

Defendant, North Carolina Police Voluntary Benefit Association, an unincorporated association, was organized on 1 July 1955. It is

governed by a board of directors. Its purpose is to provide death, total disability and retirement benefits for law enforcement officers.

Such of its rules, adopted by its board of directors, as are pertinent on this appeal are in substance, except where set out verbatim, as follows (numbering ours):

(1) The board of directors are "empowered to make, alter, and amend all rules and regulations incident to the administration of the business of the Association."

(2) Members of State police, sheriffs' departments and certain other police organizations, who are "on a full-time basis" are eligible for membership. When an Association member ceases to be such law enforcement officer, "he shall not be eligible to continue membership."

(3) Annual membership fees are assessed to defray administrative expenses and to "carry on the functions of the Association."

(4) "On retirement of a member of this Association all other members shall be assessed the sum of One Dollar payable to the Treasurer of the Association; provided, however, that any member who has reached the age of fifty at the time of becoming a member of this Association shall pay the sum of Five Dollars for each assessment. All sums collected for this assessment shall be paid to the retiring member. To be eligible to retire and receive benefits of an assessment in this Association a member must have had twenty years service as a law enforcement officer, the last ten years of which must be continuous, service, and have reached the age of fifty. No member shall receive retirement benefits until July 1, 1960."

(5) Membership is forfeited if assessments are not paid.

On 8 October 1959 the board of directors adopted an amendment to the rules, as follows: "Failure on the part of a member to notify the Association in writing of any change in employment status, such change making him ineligible for membership, shall relieve the Association of any liability for claims made on account of . . . service retirement . . . or for other cause; and such member shall forfeit any claim for refund of assessments or annual dues paid by him during his period of eligibility."

Plaintiff applied for and was admitted to membership in the Association 29 June 1956. At that time he was 66 years of age and had been continuously a law enforcement officer "on a full-time basis" for more than 21 years, serving as a game protector in the employment of the North Carolina Wildlife Resources Commission (formerly the Division of Game and Inland Fisheries of the North Carolina Department of Conservation and Development). There was no change of status in plaintiff's employment until 1 March 1957. At that time his

classification was changed to "farm foreman" and he was paid on an hourly basis. On 21 February 1957 he appeared before the board of directors of the Association to explain his change of status and determine if it would affect his membership. The directors adopted a motion that plaintiff "be permitted to continue his membership in the Association, subject to reconsideration by the Board of his or any other case which may come up later if there is any change in employment status." Plaintiff was employed on an hourly, but full-time, basis by the Commission until April 1958. Plaintiff again appeared before the board of directors of the Association on 28 March 1958 and informed the board "that effective March 1, 1957, he resigned as a game protector, on straight salary basis, withdrew his contributions from the Teachers' and State Employees' Retirement System and since that date has (sic) been employed on a 'certified temporary' basis." The directors took no action in consequence of this information. After April 1958 plaintiff received no compensation from the Wildlife Commission except for two periods, January 1959 to April 1959 and from January 1960 to May 1960, during which periods he was employed as a temporary farm game worker on an hourly basis. On 15 April 1958 plaintiff became a deputy sheriff of Richmond County, and from time to time served as such without compensation. He at all times retained his game protector's badge and from time to time served in the capacity of game protector without compensation except as hereinbefore stated.

Plaintiff was regularly assessed as a member of the Association from the time he joined, 29 June 1956, until 6 July 1960, and in each instance paid the sum assessed. He was subject to $5 assessment because of his age. On 6 July 1960 he applied in due form for retirement benefits. At that time the Association had 1807 members assessable at $1 each, and 153 members assessable at $5 each. The Secretary to the board of directors ruled that plaintiff was not eligible for retirement benefits and declined to make an assessment for him. The board of directors later approved this ruling. On 19 October 1960 plaintiff instituted this action to require an assessment in his behalf and to recover retirement benefits.

Jury trial was waived and the case was heard upon stipulation of facts and oral and documentary evidence. The facts developed are in substance as stated above. The court concluded that plaintiff was entitled to retirement benefits, and adjudged: ". . . that the plaintiff be, and he is hereby declared to be a member of the defendant Association as of July 6, 1960, and entitled to the retirement benefit assessment of the Association. It is ordered that the defendant Association forthwith assess each person who was a member of the said Association on July 6, 1960, and under 50 years of age at $1 each, and each person who was

a member as of July 6, 1960, and was over 50 years of age at $5.00 each and pay the sum collected from this assessment over to the plaintiff."

Defendant appeals.

*Page & Page for plaintiff.*
*Bynum & Bynum for defendant.*

MOORE, J.   The trial judge concluded, as a matter of law, that plaintiff was entitled to retirement benefits under the rules and regulations of defendant Association pertaining to retirement.

The relationship of defendant Association and plaintiff is that of insurer and insured. *Williams v. Order of Heptasophs,* 172 N.C. 787, 789, 90 S.E. 888. The constitution, by-laws, rules and regulations of a beneficial association operate as a contract and should be reasonably and liberally construed to effectuate the benevolent purpose of the association and the manifest intention of the parties. That construction must be put on the by-laws and rules of the association, taken as a whole, which is most favorable to the members. When the rights of members are involved the by-laws and rules declaring a forfeiture are to be construed so as to prevent a forfeiture if they are reasonably susceptible of such construction. 10 C.J.S., Beneficial Associations, s. 28, p. 269; 18 Appleman: Insurance Law and Practice (1945), s. 10267, p. 575.

The rules of defendant Association provide that "to be eligible to retire and receive benefits of an assessment . . . a member must have had twenty years service as a law enforcement officer, the last ten of which must be continuous service, and have reached the age of fifty." At the time, 1 March 1957, that plaintiff resigned as a game protector on a straight salary basis, withdrew his contributions from the Teachers' and State Employees' Retirement System, and was placed on a "certified temporary" basis at an hourly wage, he had met all of the requirements for retirement benefits. He was 67 years of age and had served continuously for more than twenty-two years as a full-time game protector. But defendant insists that the last ten years of continuous service, to make plaintiff eligible under the rules, must extend to the date of application for retirement benefits. The rules provide that "No member shall *receive* benefits until July 1, 1960." (emphasis ours) We do not agree with defendant's construction of this provision. It merely provides that retirement benefits may not be *received* before July 1, 1960. There is nothing in the rule respecting "Retirement" which prevented a member from qualifying for the assessment and benefits before that date. It is obvious that the date was fix-

ed to assure a five-year waiting period from the date the Association was organized so that there would not be such number of retirements and assessments in the early stages of the Association's existence as would discourage younger officers in seeking and maintaining membership.

But defendant contends that only members could apply for and receive retirement benefits, and that on 6 July 1960 plaintiff was not eligible for membership and was not a member. Defendant relies on the rule that "when any member ceases to be a (full-time) law enforcement officer . . . he shall not be eligible to continue membership. . . ." For the purposes of this appeal we assume, but do not decide, that under ordinary circumstances this provision would bar plaintiff's right. It must be conceded that plaintiff was not a full-time law enforcement officer after April 1958, and perhaps not after February 1957. However, the trial court ruled that defendant had waived this eligibility rule and was "estopped to deny that (plaintiff) was a member of the Association on July 6, 1960" — the date he applied for retirement benefits.

An insurer may waive provisions inserted in the insurance contract for its benefit. *Sudan Temple v. Umphlett,* 246 N.C. 555, 99 S.E. 2d 791. The pertinent law with respect to waiver is stated in *Hicks v. Insurance Co.,* 226 N.C. 614, 617, 39 S.E. 2d 914, as follows: "Waiver of the forfeiture provision in a policy of insurance is predicated on knowledge on the part of the insurer of the pertinent facts and conduct thereafter inconsistent with an intention to enforce the condition. In *Coile v. Com. Travelers,* 161 N.C. 104, 76 S.E. 622, quoted in *Paul v. Ins. Co.,* 183 N.C. 159, 162, and in *Arrington v. Ins. Co.,* 193 N.C. 344, it is said: 'A course of action on the part of the insurance company which leads the party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.' *Ins. Co. v. Eggleston,* 26 U.S. 577; *Ins. Co. v. Norton,* 96 U.S., 234."

Plaintiff personally appeared before the board of directors of the Association on 21 February 1957 and the board was advised that the employment status of plaintiff would change, effective 1 March 1957, from a permanent salaried employee to an hourly basis. The board permitted plaintiff to continue his membership, subject to reconsideration. The record does not disclose any further action by the board with respect to this matter. Again, on 28 March 1958, plaintiff appeared before and informed the board that "effective March 1, 1957, he resigned as a game protector, on a straight salary basis, withdrew his

contributions from the Teachers' and State Employees' Retirement System and since that date has been employed on a 'certified temporary' basis." The directors took no action to terminate his membership, but, on the contrary, the Association continued to carry him on its rolls and assessed him in the same manner other senior members were assessed. This continued until he applied for retirement benefits on 6 July 1960. He promptly paid all assessments. These facts are sufficient to support the conclusion that defendant, with knowledge of plaintiff's employment status, waived the forfeiture of membership provision and acted in a manner inconsistent with an intention to enforce the provision.

Defendant further contends that plaintiff forfeited his right to retirement benefits by failing "to notify the Association *in writing* of any change in employment status." The contention is not sustained. The rule relied on is incorporated in an amendment adopted by the board of directors on 8 October 1959, and set out in full in the factual statement. It is doubtful that this amendment is binding in any way on plaintiff since it was adopted without his knowledge and consent, after he became a member, and was not submitted to and approved by a majority of the members of the Association. *Bragaw v. Supreme Lodge,* 128 N.C. 354, 38 S.E. 905. But assuming that it was binding on plaintiff after its adoption, it had no retroactive effect and the employment status of plaintiff did not change after its adoption. He could not have been under any duty to give a written notice.

The judgment below orders the Association to assess each person who was a member of the Association on 6 July 1960 and pay the sum collected to the plaintiff. It is probable that some of those who were members on that date have since died, retired, become disabled, or otherwise terminated their membership, and are not now subject to assessment. According to facts stipulated, the Association on 1 July 1960 had "1807 members who were assessable at $1 each, and 153 members who were assessable at $5 each." Plaintiff was therefore entitled to receive $2572. The superior court should order the Association: (1) to forthwith assess all of its presently assessable members who were subject to assessment on 6 July 1960, and pay over the amount collected from the assessments to plaintiff to be credited by him on the amount to which he was and is entitled; (2) to order the Association in its ensuing annual assessment of fees to include a sufficient sum to pay plaintiff the balance due him, under the authority conferred upon the board of directors to assess annual fees for "whatever it considers necessary to carry on the functions of the Association," and to pay such

balance to plaintiff when thus collected. The cause is remanded in order that the judgment may be modified in accordance with the fore-going directives.

Modified and affirmed.