WILLIAM H. BURGESS AND ALMA A. BURGESS v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY

No. 799SC243

(Filed 8 January 1980)

**1. Insurance § 127— provision against other insurance—no ambiguity**

There was no merit to plaintiffs' contention that the "other insurance" forfeiture provisions in an insurance policy covering their farm dwelling were void for ambiguity, since the language of the policy was plain and clear and prohibited the policyholder from obtaining other insurance on the dwelling only; other provisions would permit the policyholder to take out insurance on other property covered by the policy if a written endorsement to that effect was added; and such other insurance, approved by endorsement, would be subject to the pro-rata liability provision of the policy.

**2. Insurance § 128— other insurance provision—no waiver**

There was no merit to plaintiffs' argument that acceptance of premiums by defendant with knowledge of the existence of other insurance constituted a waiver of the "other insurance" forfeiture clause, since defendant's agent who sold plaintiffs the insurance informed them of the "other insurance" provision and its consequences; there were no facts or circumstances from which knowledge of plaintiffs' continued maintenance of another insurance policy could be imputed to defendant; and defendant's agent had no duty to investigate to determine whether plaintiffs had in fact cancelled their other insurance policy.

**3. Husband and Wife § 3.1— husband's release of insurer—husband as wife's agent**

Plaintiffs' contention that payment by defendant insurer to the male plaintiff pursuant to the contents and living expense provisions of the insurance policy did not discharge defendant's obligation to the female plaintiff under the

policy was without merit since the evidence tended to show that, in signing the proof of loss and release forms and in accepting defendant's check, the male plaintiff was acting as agent for his wife, the female plaintiff, and that she ratified his acts in accepting the use of the funds.

APPEAL from *Allen (C. Walter), Judge*. Judgment entered 31 October 1978 in Superior Court, WARREN County. Heard in the Court of Appeals 26 October 1979.

Plaintiffs' home and its contents were destroyed by fire on 3 November 1976. On 9 April 1975, defendant issued to plaintiffs its policy of insurance on their home and its contents, providing $20,000 coverage on the dwelling, $10,000 coverage on contents, and $2,000 coverage for additional living expenses. The policy issued was a standard farmowners policy, approved by the North Carolina Fire Insurance Rating Bureau for use in North Carolina.

At the time defendant issued its policy, plaintiffs had in effect another policy on their home and contents with Iowa Mutual Insurance Company, insuring the dwelling for $20,000 and contents for $4,000. Plaintiffs paid premiums as due on both policies until the date of the fire. After the fire, defendant learned that the Iowa Mutual policy was in effect and denied coverage on the dwelling under its policy. Defendant later paid plaintiffs $10,900 under the contents and living expense clauses of its policy. Iowa Mutual settled plaintiffs' claim on its policy by paying plaintiffs $16,024 on the dwelling loss and $4,000 on the contents loss. Plaintiffs presented evidence which tended to show that at the time of the fire, their dwelling had a replacement cost or fair market value of between $34,000 and $45,000. In their complaint, they had alleged a value of $39,500.

Plaintiffs sought to recover the sum of $20,000 for loss of the dwelling. They also set forth a claim for relief wherein they alleged that defendant's acts in selling, issuing, and denying coverage under the dwelling loss provisions of the policy constituted unfair and deceptive trade practices in violation of G.S. 75-1.1. Plaintiffs sought treble damages and attorney's fees pursuant to G.S. 75-16 and 75-16.1.

The case was heard before Judge Allen, sitting in the absence of a jury. The court entered judgment ordering defendant to refund plaintiffs $136.96, representing that proportion of

the premiums paid for insurance on the dwelling. The court denied plaintiffs any further recovery or relief. From that judgment, plaintiffs have appealed.

*Perry, Kittrell, Blackburn & Blackburn, by George T. Blackburn II, for plaintiff appellants.*

*Zollicoffer & Zollicoffer, by John H. Zollicoffer, Jr., for defendant appellee.*

WELLS, Judge.

Our consideration of this case was hampered by the fact that the insurance policy in issue was not included in the record or received as an exhibit. Nevertheless, the parties do not, in their briefs, disagree as to the material portions of the policy which they have set out.

Defendant denies coverage under the "other insurance" provision in the policy issued to plaintiffs, which states:

4. OTHER INSURANCE: Other insurance covering the described farm dwelling building is not permitted. Unless otherwise provided in writing added hereto, other insurance covering on any property which is the subject of insurance under Coverages E and F of Section 1 of this policy is prohibited. If during the term of this policy the insured shall have any such other insurance, whether collectible or not, and unless permitted by written endorsement added hereto, the insurance under this policy shall be suspended and of no effect.

[1] Plaintiffs first argue that the "other insurance" forfeiture provisions in the policy are void for ambiguity. In support of this argument, they point to the "pro-rata liability" section of the policy which provides:

PRO-RATA LIABILITY. This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

We note that the courts of our State have long given validity to such "other insurance" clauses for insurance covering property. *Roper v. Insurance Cos.*, 161 N.C. 151, 76 S.E. 869 (1912).

Questions concerning ambiguity in insurance policies have been considered frequently by our courts. The guiding principle was put succinctly by Chief Justice Sharp in *Woods v. Insurance Co.*, 295 N.C. 500, 505-506, 246 S.E. 2d 773, 777 (1978), as follows:

> As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued. Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

We find no ambiguity here. The language with respect to coverage on the dwelling is plain and clear. It prohibits the policyholder from obtaining other insurance on the dwelling only. The remaining language of paragraph four would allow a policyholder to take out insurance on other property covered by the policy if a written endorsement to that effect was added. Such other insurance, approved by endorsement, would clearly be subject to the pro-rata liability provision.

[2] Plaintiffs next argue that acceptance of the premiums by defendant with knowledge of the existence of other insurance constituted a waiver of the "other insurance" forfeiture clause. There is no question that an insurer may waive a policy provision inserted for its benefit. *Bray v. Benefit Association*, 258 N.C. 419, 128 S.E. 2d 766 (1963). However, in the absence of knowledge of the breach, or facts to put it on inquiry, there can be no waiver or duty to investigate. *Swartzberg v. Insurance Co.*, 252 N.C. 150, 113 S.E. 2d 270 (1960). Whether an insurer has waived an "other insurance" clause is ordinarily an issue for the trier of fact. *Laughinghouse v. Insurance Co.*, 200 N.C. 434, 157 S.E. 131 (1931).

The trial judge made the following finding of fact:

    8. That on April 9, 1975 at the time Plaintiffs made application for the insurance policy with North Carolina Farm Bureau Mutual Insurance Company, the Defendant's agent advised Plaintiffs that the proposed North Carolina Farm Bureau Mutual Insurance Company policy prohibited other insurance on the farm dwelling and that the Plaintiffs must cancel said insurance with Iowa Mutual Insurance Company for said policy of North Carolina Farm Bureau Mutual Insurance Company to be effective as insuring the farm dwelling.

The testimony of the agent of defendant who sold plaintiffs the policy that he informed them of the "other insurance" provision and its consequences is sufficient to support the above finding. We are therefore bound by this finding, even though there is evidence to the contrary. *Henderson County v. Osteen*, 297 N.C. 113, 254 S.E. 2d 160 (1979). There was no evidence introduced at trial supporting plaintiffs' contention that they had been deliberately misinformed or misled by defendant.

    Plaintiffs argue that defendant's collection and retention of plaintiffs' premium payments caused it to waive forfeiture of the policy. Plaintiffs cite *Hicks v. Insurance Co.*, 226 N.C. 614, 39 S.E. 2d 914 (1946) in support of this argument. The decision in *Hicks* hinged on the fact that the two life insurance policies purchased by the plaintiff were issued by the same company. The Court held that under such circumstances, knowledge of the existence of the prior policy issued by the defendant would have to be imputed to the defendant, resulting in the waiver of its prohibition against other coverage in policies subsequently issued by *that company* covering the same property. In the case before us, the insured purchased two insurance policies covering the same dwelling, *each issued by a different company*. There were no facts or circumstances from which knowledge of plaintiffs' continued maintenance of the Iowa Mutual policy could be imputed to defendant.

    Plaintiffs insist that defendant's agent had a duty to investigate to determine whether they had in fact cancelled the Iowa Mutual policy, as he informed them they should. We do not agree. To place such a burden on insurance agents would

manifestly inhibit the opportunity for the public to change insurance companies or agents. What plaintiffs urge would be detrimental, not beneficial to the public's interest which would be best served by promoting competition among insurers.

[3] Plaintiffs argue that payment by defendant to William Burgess pursuant to the contents and living expense provisions of the policy did not discharge defendant's obligation to Alma Burgess under the policy. William Burgess signed the proof of loss and release forms and accepted defendant's check. Judge Allen found that in these transactions, William Burgess was acting as agent for his wife, Alma Burgess, and that she ratified his acts in accepting the use of the funds.

> Agency of the husband for his wife may be shown by evidence of facts and circumstances which authorize a reasonable inference that he was authorized to act for her.

*Passmore v. Woodard*, 37 N.C. App. 535, 540, 246 S.E. 2d 795, 800 (1978). Alma Burgess testified that the insurance proceeds were used to restore the house, title to which was held by both husband and wife. She stated that she left collection of the insurance proceeds to her husband. It seems clear that Judge Allen's finding, that William Burgess was acting as agent for his wife and for her benefit in accepting payment from defendant, was supported by sufficient evidence.

Judge Allen concluded that plaintiffs are not entitled to any recovery under Chapter 75 of the General Statutes. We agree. The evidence in this case simply does not suggest that defendant's agent engaged in any deceitful or fraudulent activities or trade practices. As noted earlier in this opinion, we see no evidence of any attempt on the part of defendant's agent to misinform or mislead plaintiffs about their insurance coverage.

We find plaintiffs' other assignments of error to be without merit.

Affirmed.

Judges ARNOLD and WEBB concur.