STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff v.
ATLANTIC INDEMNITY COMPANY, Defendant

No. COA94-621

(Filed 19 March 1996)

1. **Insurance § 621 (NCI4th)— termination clause—no ambiguity—no notice requirements—no unconscionability— clause enforceable**

A termination clause in an automobile liability policy which provided for automatic termination if the insured obtained any similar insurance on the covered auto was not ambiguous and violative of public policy as unconscionable and permitting the unjust enrichment of plaintiff insurer, since the language of the clause in question did not state that the insured should expect notice of termination; requiring notice from the original insurer would be impractical when only the insured and new insurer would possess knowledge of the new contract; statutorily imposed notice requirements of N.C.G.S. § 20-310(f) are inapplicable when termination results from an act of the insured rather than the insurer; interpretation of the termination clause to dic-

STATE FARM MUT. AUTO. INS. CO. v. ATLANTIC INDEMNITY CO.

[122 N.C. App. 67 (1996)]

tate cancellation upon the insured's procurement of similar insurance ensures continuous liability coverage and in no way violates the purpose of N.C.G.S. § 20-310; defendant's failure to plead the affirmative defense of unconscionability below operated to bar its raising of that issue on appeal; there was no showing that insured was deprived of a "meaningful" alternative to obtaining plaintiff's policy containing the termination clause or that she found herself in an oppressive bargaining position vis-a-vis plaintiff; and the Court of Appeals has previously expressed its willingness to enforce similar termination provisions.

**Am Jur 2d, Sales § 238.**

**Doctrine of unconscionability as applied to insurance contracts. 86 ALR3d 862.**

2. **Insurance § 621 (NCI4th); Estoppel § 13 (NCI4th)— automatic termination of insurance—equitable estoppel inapplicable—no duty of plaintiff to defend and insure**

Where plaintiff issued a policy of insurance which contained an automatic termination clause upon insured's obtaining a similar policy on the covered auto, insured obtained similar coverage from defendant without plaintiff's knowledge, insured was involved in an accident, plaintiff defended insured and admitted coverage, plaintiff subsequently learned of defendant's policy, plaintiff notified defendant that, in consequence of the automatic termination of its policy, defendant was responsible for taking over insured's defense and providing any necessary coverage, defendant denied responsibility and plaintiff filed this action for declaratory judgment, plaintiff was not required by the doctrine of equitable estoppel to fulfill its contractual obligations to defendant and insure, since the record contained no indication that plaintiff conducted itself in a manner so as to misrepresent or conceal facts, and plaintiff did not have knowledge of its rights and of facts which would enable it to take action as to enforcement thereof.

**Am Jur 2d, Sales § 184.**

**Actual receipt of cancellation notice mailed by insurer as prerequisite to cancellation of insurance. 40 ALR4th 867.**

**Validity and construction of automobile insurance provision or statute automatically terminating coverage when**

insured obtains another policy providing similar coverage. 61 ALR4th 1130.

What constitutes waiver by insured or insured's agent of required notice of cancellation of insurance policy. 86 ALR4th 886.

Appeal by defendant from order entered 30 March 1994 by Judge James R. Strickland in Craven County Superior Court. Heard in the Court of Appeals 1 March 1995.

*J. Darby Wood, P.A., for plaintiff-appellee.*

*Wallace, Morris, Barwick & Rochelle, P.A., by P.C. Barwick, Jr. and Elizabeth A. Heath, for defendant-appellant.*

JOHN, Judge.

In this declaratory judgment action, defendant Atlantic Indemnity Company (Atlantic) appeals the trial court's ruling upholding the termination clause in a policy of insurance issued by plaintiff State Farm Mutual Automobile Insurance Company (State Farm). Atlantic argues in the alterative that the trial court erred by failing to determine State Farm was equitably estopped from refusing to provide coverage under the policy at issue. We find Atlantic's contentions unpersuasive.

Pertinent factual and procedural background information is as follows: Ethel B. Darrisaw (Darrisaw) was the named insured under a State Farm automobile insurance policy. Darrisaw paid the premium providing coverage for a term between 20 February 1992 and a date subsequent to 10 November 1992. The State Farm policy, which insured Darrisaw's 1988 Plymouth automobile, contained the following provision:

Automatic Termination

If you obtain other insurance on **your covered auto**, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

(Emphasis in original) (hereinafter "the termination clause").

Thereafter, Darrisaw obtained from Atlantic an automobile insurance policy providing liability coverage on the identical 1988 Plymouth vehicle, effective 4 November 1992. Six days later, on 10 November 1992, Darrisaw's Plymouth automobile collided with a

STATE FARM MUT. AUTO. INS. CO. v. ATLANTIC INDEMNITY CO.

[122 N.C. App. 67 (1996)]

vehicle owned by Laurie M. Woolard and her father, Robert H. Woolard (the Woolards). State Farm, unaware of the Atlantic coverage, hired an attorney to represent Darrisaw in the subsequent negligence action initiated by the Woolards. State Farm undertook the defense without reservation of rights, and represented on two occasions in the course of the action that its policy was in effect at the time of the collision—once in responses to interrogatories and once under oath in the affidavit of its underwriting operations superintendent.

In October 1993, State Farm became aware of the Atlantic policy. In November 1993, State Farm notified Atlantic that, in consequence of automatic termination of the State Farm policy upon the effective date of the Atlantic policy, Atlantic was responsible for taking over Darrisaw's defense and providing any necessary coverage.

When Atlantic responded in December 1993 denying responsibility, State Farm filed the instant complaint for declaratory judgment, seeking a determination that the Atlantic policy was in full force and effect on 10 November 1992. In Atlantic's answer and amended answer, filed 4 and 14 March 1994 respectively, it maintained the State Farm policy had not terminated prior to the date of the collision, that Atlantic was liable only for its pro rata share of the damages in the underlying tort action, and finally that State Farm was equitably estopped from denying liability.

The trial court determined the State Farm policy had automatically terminated 4 November 1992, and ruled that the Atlantic policy was in full force and effect on that date. Atlantic appeals.

I.

[1] Atlantic argues the termination clause is ambiguous and also violative of public policy as unconscionable and permitting the unjust enrichment of State Farm. Under the facts of the case *sub judice*, these contentions cannot be sustained.

While our courts do not appear previously to have addressed the validity of comparable termination clauses within automobile insurance policies, the Supreme Court's holding in *Baysdon v. Insurance Co.*, 259 N.C. 181, 130 S.E.2d 311 (1963), is instructive. In *Baysdon*, the insured's original fire policy contained no termination provision and the Court held the insured's act of procuring additional fire insurance, without requesting the original insurer to cancel its policy, did

STATE FARM MUT. AUTO. INS. CO. v. ATLANTIC INDEMNITY CO.

[122 N.C. App. 67 (1996)]

not have the effect of terminating the original policy. *Id.* at 188, 130 S.E.2d at 317. Significantly for our purposes, the court stated:

> [i]t comes to this—an insurance policy is a contract; . . . <u>it may be terminated in accordance with the provisions thereof</u> or by mutual consent, a meeting of the minds, but one of the parties may not terminate it without the assent of the other <u>unless the contract so provides</u>.

*Id.* (Emphasis added).

The case *sub judice* is similar to *Baysdon* in that the insured (Darrisaw) procured additional auto liability insurance from Atlantic on the identical vehicle insured by State Farm. However, unlike *Baysdon*, the State Farm policy at issue herein expressly terminated by its own terms on the effective date of new, similar coverage on a "covered auto." Darrisaw's policy with State Farm, as a contract, therefore "terminated in accordance with the provisions thereof," *id.*, immediately upon the effective date of the Atlantic policy.

We reject Atlantic's arguments that the termination clause is ambiguous and violates public policy. Atlantic initially insists that the policy requirement of prior notice by the insurer for effective cancellation or termination might lead the "average lay person" also to expect notice prior to termination resulting from the insured's procurement of additional, similar insurance on the same automobile. This assertion fails for several reasons.

First, "[p]ersons entering contracts of insurance, like other contracts, have a duty to read them and ordinarily are charged with knowledge of their contents," *Nationwide Mut. Insur. Co. v. Edwards*, 67 N.C. App. 1, 8, 312 S.E.2d 656, 661 (1984). The language of the specific termination clause at issue does not state, and cannot be reasonably inferred to mean, that the *insured* should expect notice before termination occurs as the result of new, similar insurance being obtained by the *insured.* Moreover, requiring notice from the original insurer would be at best impractical when only the insured and new insurer would possess knowledge of the new contract.

Next, our courts have held the statutorily imposed notice requirements of N.C. Gen. Stat. § 20-310(f), read into all policies as part of the Vehicle Responsibility Act of 1957, *Pearson v. Nationwide Mutual Ins. Co.*, 325 N.C. 246, 253, 382 S.E.2d 745, 748 (1989), to be inapplicable when termination results from an act of the insured and

STATE FARM MUT. AUTO. INS. CO. v. ATLANTIC INDEMNITY CO.

[122 N.C. App. 67 (1996)]

not an act of the insurer. *Ins. Co. v. Davis*, 7 N.C. App. 152, 157, 171 S.E.2d 601, 604 (1970). At the time the policy was issued, *see White v. Mote*, 270 N.C. 544, 555, 155 S.E.2d 75, 82 (1967) ("laws in effect at the time of issuance of a policy of insurance become a part of the contract . . . . "), the statute provided as follows:

> No cancellation or refusal to renew by an insurer of a policy of automobile insurance is effective unless the insurer has given the policyholder notice . . . .

G.S. § 20-310(f) (1993) (repealed 1 February 1995).

*Faizan v. Insurance Co.*, 254 N.C. 47, 59, 118 S.E.2d 303, 312 (1961), as interpreted in *Smith v. Nationwide Mut. Ins. Co.*, 72 N.C. App. 400, 407, 324 S.E.2d 868, 873, *rev'd*, 315 N.C. 262, 337 S.E.2d 569 (1985), held Faizan's (the insured) acquisition of another policy of insurance from a different company, in combination with his failure to pay the premium when due, constituted an "unequivocal" rejection by him of the initial policy and that notice by the insurer to the insured therefore was not required under G.S. § 20-310(f). *But see Smith v. Nationwide Mut. Ins. Co.*, 315 N.C. 262, 271, 337 S.E.2d 569, 574 ("the critical point decided in [*Faizan*] is that where the insurer gives timely notice to the insured of the expiration date of an automobile liability insurance policy along with an offer to renew the policy if the premium is paid by the due date, no further notice to the insured is required.")

Finally, the notice requirements of G.S. §20-310, which convey certainty as to the period of coverage, work to accomplish the purpose of the 1957 Vehicle Financial Responsibility Act, *i.e.*, to provide protection to victims of motorist liability by requiring continuous liability coverage. *Pearson*, 325 N.C. at 253-54, 382 S.E.2d at 747-48. Therefore, interpretation of the termination clause to dictate cancellation upon the insured's procurement of similar insurance—albeit without notice by the insurer—ensures continuous liability coverage and in no wise violates the purpose of the statute.

Our holding finds support in *Taxter v. Safeco Ins. Co.*, 721 P.2d 972, 974, 44 Wash. App. 121, 126 (1986), where the Washington court upheld a similar termination provision, ruling it was consented to by the insured and did not conflict with statutory notice requirements. Moreover, the court determined the statute to govern only cancellation by the insurer and not termination by unilateral acts of the insured, reasoning that the purpose of the notice statute was to pro-

vide opportunity for the *insured* to obtain other insurance prior to cancellation of coverage. *Id.*

Atlantic also asserts that the termination clause violates public policy. It first alleges unconscionability as a basis for this argument. We do not agree.

> [T]his Court has previously held that "[t]o find unconscionability there must be an absence of meaningful choice on part of one of the parties [procedural unconscionability] *together with* contract terms which are unreasonably favorable to the other [substantive unconscionability]."

*Rite Color Chemical Co. v. Velvet Textile Co.*, 105 N.C. App. 14, 20, 411 S.E.2d 645, 649 (1992), *quoting Martin v. Sheffer*, 102 N.C. App. 802, 805, 403 S.E.2d 555, 557 (1991) (emphasis added). Unconscionability is an affirmative defense, and the party asserting it has the burden of proving both procedural and substantive unconscionability. *Rite Color*, 105 N.C. App. at 20, 411 S.E.2d at 649.

In the case *sub judice*, Atlantic set out no allegation of unconscionability either in its answer or amended answer to State Farm's complaint. Atlantic's failure to plead the affirmative defense of unconscionability below operates to bar its raising of this issue on appeal, *see Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 598, 394 S.E.2d 643, 649 (1990), *disc. rev. denied*, 328 N.C. 89, 402 S.E.2d 824 (1991) (failure to plead plaintiff's contributory negligence was bar to issue being raised on appeal), and we have no obligation to discuss it further.

Moreover, assuming *arguendo* Atlantic's pleadings may be read to allege the affirmative defense of unconscionability, the record reveals no showing that Darrisaw was deprived of a "meaningful," *Rite Color*, 105 N.C. App. at 20, 411 S.E.2d at 649, alternative to obtaining State Farm's policy containing the termination clause. Atlantic thus failed to come forward with evidence of the requisite procedural unconscionability. *Id.*

Moreover, Atlantic's unsupported contention that the policy unfairly terminates an insured's liability coverage fails to rise to the level of substantive unconscionability required by our courts:

> A court will generally refuse to enforce a contract on the ground of unconscionability only when the inequality of the bargain is so manifest as to shock the judgment of a person of com-

mon sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.

*Brenner v. Little Red School House, Ltd.*, 302 N.C. 207, 213, 274 S.E.2d 206, 210 (1981).

There is no indication in the record that Darrisaw found herself in an oppressive bargaining position *vis-à-vis* State Farm. Moreover, while it is uncontroverted that Darrisaw received no refund of premium from State Farm, nothing in the record suggests a proportionate refund was either requested of or denied by State Farm. The instant circumstance thus does not constitute one where " '[a]n instinctively felt sense of justice cries out against such a sharp bargain.' " *Gas House, Inc. v. Southern Bell Telephone Co.*, 289 N.C. 175, 186, 221 S.E.2d 499, 506 (1976) (citation omitted).

Finally, this Court has expressed its willingness to enforce similar termination provisions. *See, City of Greensboro v. Reserve Ins. Co.*, 70 N.C. App. 651, 660-61, 321 S.E.2d 232, 237-38 (1984) (public officials liability insurance policy); and *Burgess v. Insurance Co.*, 44 N.C. App. 441, 444, 261 S.E.2d 234, 236 (1980) (homeowner insurance policy).

Atlantic also contends the termination clause violates public policy because it permits State Farm to become unjustly enriched by retention of premiums paid on policies terminated under the clause. This argument is inapposite to the circumstances *sub judice*. Unjust enrichment is

a claim in quasi contract or a contract implied in law . . . . If there is an [actual] contract between the parties the contract governs the claim and the law will not imply a contract.

*Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556, *reh'g denied*, 323 N.C. 370, 373 S.E.2d 540 (1988).

Having rejected Atlantic's arguments, we conclude the trial court properly enforced the termination clause.

II.

[2] Atlantic maintains alternatively that State Farm, irrespective of the validity of the termination clause, was required by application of the doctrine of equitable estoppel to fulfill its contractual obligations to defend and insure. Atlantic argues that

[State Farm's] actions, admissions, failure to act and inconsistent positions lead Ms. Darrisaw to believe that coverage existed and that she, defendant and the plaintiffs' *(sic)* in the underlying tort action have all been unjustly prejudiced by plaintiff's denial of coverage.

Atlantic focuses upon State Farm's actions of continuous representation, admissions of coverage, and failure to cancel coverage or refund any premium.

The doctrine of equitable estoppel rests upon principles of equity and is designed to aid the law in the administration of justice when without its intervention injustice would result.

*Thompson v. Soles*, 299 N.C. 484, 486, 263 S.E.2d 599, 602 (1980).

To establish a claim of equitable estoppel, the following elements must be met:

(1) The conduct to be estopped must amount to false representation or concealment of material fact or at least which is reasonably calculated to convey the impression that the facts are other than and inconsistent with those which the party afterwards attempted to assert;

(2) Intention or expectation on the party being estopped that such conduct shall be acted upon by the other party or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon.

(3) Knowledge, actual or constructive, of the real facts by the party being estopped;

(4) Lack of knowledge of the truth as to the facts in question by the party claiming estoppel;

(5) Reliance on the part of the party claiming estoppel upon the conduct of the party being sought to be estopped;

(6) Action based thereon of such a character as to change his position prejudicially.

*Investors Title Ins. Co. v. Herzig*, 101 N.C. App. 127, 134-35, 398 S.E.2d 659, 664 (1990), *citing Transit, Inc. v. Casualty Co.*, 285 N.C. 541, 206 S.E.2d 155 (1974). The party invoking the equitable estoppel

STATE FARM MUT. AUTO. INS. CO. v. ATLANTIC INDEMNITY CO.

[122 N.C. App. 67 (1996)]

doctrine has the burden of proving facts necessary to establish the essential elements. *In Re Will of Covington,* 252 N.C. 546, 114 S.E.2d 257, 260 (1960).

Examining the record in light of the foregoing principles, we determine the showing regarding certain of the essential elements of equitable estoppel to have been insufficient. First, the record contains no indication that State Farm conducted itself in a manner so as to misrepresent or conceal facts, or which in any way was calculated to convey an impression inconsistent with its later position. Although Atlantic properly emphasizes that either an intentional act *or* culpable negligence would establish this element, *Thompson,* 299 N.C. at 487, 263 S.E.2d at 602, nothing in the record evidence manifests negligence on the part of State Farm in failing to discover Darrisaw's actions which effectuated termination of the State Farm policy. To the contrary, State Farm promptly notified its insured and Atlantic upon discovery of the latter's policy, and, upon disagreement with Atlantic over the effect of the termination clause, timely brought this action to clarify coverage on the insured's automobile.

Moreover, in order for the doctrine of equitable estoppel to apply, the party against whom estoppel is asserted must have full knowledge of its rights and of facts which will enable it to take action as to enforcement thereof. *Stonewall Insurance Co. v. Fortress Reinsurers Managers,* 83 N.C. App. 263, 270, 350 S.E.2d 131, 135 (1986), *disc. review denied,* 319 N.C. 410, 354 S.E.2d 728 (1987). Atlantic conceded in its Answer that State Farm had no actual knowledge of Darrisaw's Atlantic policy until October, 1993. Further, in view of Darrisaw's silence on the matter, it cannot be said State Farm possessed constructive knowledge of the Atlantic policy.

Based on the foregoing, the order of the trial court is in all respects affirmed.

Affirmed.

Judges JOHNSON and MARTIN, Mark concur.