H. M. WADE MANUFACTURING COMPANY v. ABE LEFKOWITZ, TRADING AND DOING BUSINESS AS MEARS JEWELRY COMPANY.

(Filed 29 March, 1933.)

**1. Evidence J a—Written terms of contract may be waived by conduct clearly showing an intent to waive its provisions.**

    Nothing else appearing, a written contract merges all prior negotiations between the parties and the writing abides unless modified, set aside or rescinded according to law, but the written contract may be waived or abandoned by the parties, and while waiver is dependent upon the intent of the parties, such intent may be established as a result of their conduct, and is generally a question for the jury.

**2. Sales F d—Evidence of seller's waiver of provisions of contract as to manner and time for making complaint held sufficient for jury.**

    The parties entered into a written contract whereby plaintiff agreed to sell and defendant to buy certain store fixtures. The contract provided for partial down payment and the execution of notes for the balance of the purchase price, and that the use of the fixtures for a period of five days should constitute an acceptance thereof as being in conformity with the specifications of the contract, and that all complaint as to quality should be made in writing within ten days from delivery. Defendant's evidence tended to show that upon delivery of the goods he entered complaint that they were not up to the specified quality and were not made in a good and workmanlike manner, that plaintiff's secretary, treasurer and general manager made repeated visits to defendant's store and repeatedly promised to remedy the defects to defendant's satisfaction, and

15—204

that no reference was made in such conferences to the stipulations in the contract relative to complaints. In an action to recover the balance of the purchase price: *Held,* the evidence viewed in the light most favorable to defendant was sufficient to be submitted to the jury on the question of whether plaintiff had waived the provisions of the contract prescribing that complaints as to quality should be made in writing and that use of the property for five days should constitute acceptance thereof.

CIVIL ACTION, before *MacRae, Special Judge,* at June Term, 1932, of MECKLENBURG.

. The plaintiff brought suit against defendant for the sum of $1,820, alleging that on or about 26 September, 1930, the plaintiff and the defendant entered into a written contract in which the plaintiff contracted and agreed to manufacture and furnish certain store fixtures for the defendant. A portion of the purchase price was to be paid in cash upon delivery of the fixtures and the balance of $2,582 was to be secured by a chattel mortgage upon the same. The defendant made payments from time to time until the claim was reduced to a balance of $1,820.

The defendant admitted the agreement to purchase the fixtures, but alleged that the plaintiff had "agreed and warranted to deliver and install in the defendant's store the . . . fixtures and materials . . . and represented, warranted and agreed that the same would be of first-class in quality, and would be installed in a careful, workmanlike manner; that in violation of said agreement, the plaintiff failed and refused to install furniture, fixtures and material of the character and in the manner which the plaintiff had agreed to furnish . . . in that the glasses and tops of two of the show cases were improperly fixed . . . and projected beyond the line of the other show cases, . . . and that four of the said show cases and all of the panelling had ugly dark stains scattered all over the surface thereof; . . . that too much glue had been applied with the result that the said glue had exuded upon the said show cases . . . to cause ugly dark splotches and stains upon the surface thereof; that the show case doors were improperly made and installed, the construction . . . being such that there are large cracks and openings between the said show cases and the said doors with the result that dust, dirt and insects get in the inside of the show cases; that the doors to the show cases were affixed . . . in such a loose, careless and unworkmanlike manner that they had a tendency to fall to the floor when subjected to the slightest sort of jar or movement." By reason of the breach of contract in various particulars, as described in the answer, the defendant asks for damages in the sum of $2,000 by way of offset.

The written contract referred to in the pleadings, among other provisions, contains the following in substance: (1) That the entire agree-

ment for the purchase of the goods is stated in the contract and is not modified by any verbal agreement. (2) The title to the fixtures are to remain in the vendor until the purchase price is paid. (3) It is understood that the use of the furniture described in this contract or any portion thereof for a period of five days constitutes acceptance of same as complying with all the terms and specifications of this contract, and all claims for damages, errors, or shortage not filed within that time are thereby waived. (4) No salesman or agent of the company shall have the right to change or modify this contract.

The plaintiff offered evidence tending to show that the fixtures were manufactured in accordance with the specifications agreed to by the defendant, and that delivery was made about 27 November, 1930, and that upon delivery the defendant paid a certain sum in cash and executed nineteen notes for the balance of the sales contract. The first note was for $152.00, due 24 December, 1930, and the other notes of $140.00 each fell due each thirty days thereafter.

The defendant testified that the fixtures were brought to the store by the agent of plaintiff on or about 23 November, 1930, and that said agent refused to deliver the property or to permit an inspection thereof until the notes and the contract had been signed. Thereupon the defendant telephoned the general manager of plaintiff and protested the refusal to deliver. Referring to the conversation with plaintiff's general manager, defendant said: "I asked him what assurance he would give me that the fixtures were as I bought them. He said: 'You know H. M. Wade Manufacturing Company will make good.' He assured me that I was getting exactly what I had bought and not to have any worries about it. With that assurance I decided to sign the papers." After the papers were signed the agent for the plaintiff began installing the fixtures, and this work was completed about 3 December, 1930. The defendant complained to the agent installing the fixtures upon the ground that they were not properly manufactured or installed. The defendant testified: "It seems that I saw Mr. Webb (general manager of plaintiff), just a few days after that. I saw Mr. Webb about a week after December 3. Mr. Webb came in the store and said he was sorry we had had any controversy and he wanted to see what was wrong. I first directed his attention to the glue or cement running out of the cases which got all over our clothes. Cement was oozing out of the glass top inside of the cases and all over the glass, and it was impossible to keep it off our clothes. I next directed his attention to the glass projecting out of the two circular cases. . . . Then I directed his attention to the bad, dark spots below the moulding. . . . I asked him about a chair and a little table for those front cases. . . . I told him they were short. . . . I directed his attention to the glass mirror against

the wall; I think it was chipped. I also directed his attention to those small doors. I told him they were not fitting good at all; that some were real wide open and some would fall out. . . . When I directed his attention to that particular door it fell out on his foot. . . . I was right in the midst of our holiday Christmas trade. He assured me that those matters would be taken care of as he had promised me on the phone. . . . He called back sometime later and said, 'We can't do that work now, but just as soon as the season is over we will take care of it.' When I directed his attention to those matters about which I have testified, Mr. Webb made no demand that I put this complaint in writing."

The first note fell due about 24 December, 1930, and the defendant wrote a letter to the plaintiff. Defendant said: "I think I saw Mr. Webb a short time after that and he said, 'Go on and put the goods in the store.' He assured me that the defects would be taken care of satisfactorily. I paid the note later after his last assurance." Subsequently a workman from the plaintiff's office came to defendant's store and undertook to repair the defects. In January, 1931, Webb, the general manager of the plaintiff, came into the defendant's store and looked over the work. The defendant was still complaining of defects in the equipment. Defendant said: "I again directed his attention to the defects which I had reminded him of, and he said, 'We can't get at it right now. We are going to have some of the work done over there and I will have my man come in and take care of that later on.'" Afterwards a man did come from the office of plaintiff to refinish the cases. Defendant further said: "I stopped payment on the notes once or twice because they were not making any progress toward doing what they had promised me. Mr. Webb was coming in and out of the store continually from December until I stopped paying them. I paid five notes, paying the last one in March or April, 1931. . . . During the time between the installation of the job and the payment of that note Mr. Webb was in and out of my store fifteen or twenty times."

The defendant offered much evidence at the trial tending to show serious defects in the equipment and the impaired value thereof by reason of such defects.

At the conclusion of the evidence the trial judge charged the jury as follows: "You are instructed, if you believe the evidence and find the facts to be as the evidence and testimony tend to show, you will answer the issue $1,820 with interest from 24 November, 1930."

From judgment upon the verdict the defendant appealed.

*John M. Robinson and Hunter M. Jones for plaintiff.*
*Ira Julian and Tillett, Tillett & Kennedy for defendant.*

MANUFACTURING CO. *v.* LEFKOWITZ.

BROGDEN, J. Substantially the case is this: A manufacturer of store fixtures and the store owner agree in writing for the purchase and installation of certain fixtures, made to order. The written contract excludes verbal modification, eliminates the right of an agent to change the agreement, and further provides that the use of the property or any portion thereof for a period of five days constitutes an acceptance of same as complying with all the terms and specifications of this contract and all claims for damages, errors, or shortage not filed within that time. There is evidence that the equipment was materially defective and oral complaint made during the progress of installation. Repeated promises were made by the general manager of the vendor that all defects would be remedied. The purchaser, acting upon such assurances, continues to pay and then declines to pay the balance, and suit is instituted by the vendor.

The law as expounded in this jurisdiction has declared with unbroken uniformity that, nothing else appearing, all prior negotiations are presumed to be merged into a written instrument thereafter executed by the parties, and that the written word so chosen shall abide unless and until the writing is modified, set aside or rescinded upon grounds deemed by the law as sound and adequate. Notwithstanding, it is also well established that a written contract may be waived or abandoned. The general principles establishing such rights are classified in *Bixler v. Britton,* 192 N. C., 199, 134 S. E., 488. The doctrine of waiver, in proper cases, is now as firmly established as the doctrine of the rigidity and inflexibility of the written word. For instance, it is stated in *Highway Commission v. Rand,* 195 N. C., 799, 141 S. E., 892: "Provisions in a contract may be waived." A waiver has been variously defined and applied. See *Makuen v. Elder,* 170 N. C., 510, 87 S. E., 334; *Allen v. Bank,* 180 N. C., 608, 105 S. E., 401. An extensive discussion of the principle is found in *Manufacturing Co. v. Building Co.,* 177 N. C., 104, 97 S. E., 718. The court assembles various definitions of the term, including the following from Herman on Estoppel: "A waiver takes place where a man dispenses with the performance of something which he has a right to exact. A man may do that not only by saying that he dispenses with it, that he excuses the performance, or he may do it as effectually by conduct which naturally and justly leads the other party to believe that he dispenses with it. There can be no waiver unless so intended by one party, and so understood by the other, or one party has so acted as to mislead the other." And further, "the intent to waive may appear as a legal result of conduct. The actuating motive, or the intention to abandon a right, is generally a matter of inference to be deducted with more or less certainty from the external and visible acts of the party and all the accompanying circumstances of the transaction,

regardless of whether there was an actual or expressed intent to waive, or even if there was an actual but undisclosed intention to the contrary. The decisions declaring intent to be the essence of waiver recognize that the intent may be inferred from a party's conduct." Moreover, it is further said: "Since intent is an operation of the mind it should be proven and found as a fact and is rarely to be inferred as a matter of law." See, also, *Fairbanks v. Supply Co.,* 170 N. C., 315, 86 S. E., 1051; *Ferry Co. v. Fairbanks-Morse & Co.,* 201 N. C., 485.

In the case at bar Webb, disclosing the wide range of his authority to act for the plaintiff, said: "I am secretary and treasurer of the Wade Manufacturing Company and am the next man in rank after Mr. Wade in the management of the company. I occupy the position of general manager in Mr. Wade's absence. I regularly deal with matters connected with the business of the corporation with Mr. Wade's full knowledge and authority." The evidence of defendant, construed in a favorable light, tends to show that Webb came to his place of business fifteen or twenty times; that repeated promises were made by him to repair defects in the equipment and frequent assurance was given that the complaints of defendant would be arranged in a satisfactory manner. No mention was made in these conferences of the provisions of the written contract, and particularly of that clause prescribing that the use of the fixtures for a period of five days constituted an acceptance of same; nor was mention made of the provision in the conditional sales agreement that all claims for damages for defects "must be presented in writing to the vendor within ten days from the receipt of said goods."

Was the conduct of Webb, whose authority as general agent is established by the evidence, of such a nature and quality as to warrant an inference of waiver or intention to waive the rigid clauses of the written instruments? This inquiry must be submitted by proper issue and instruction to a jury. Consequently, the peremptory instruction of the trial judge must be held for error.

New trial.