Earl S. Lobdell, Plaintiff, *v.* Broome County Farmers' Fire Relief Association, Defendant.

Supreme Court, Broome County, April 25, 1934.

*Flaesch & Latham*, for the plaintiff.

*Burr W. Mosher*, for the defendant.

Senn, Official Referee. The defendant is a co-operative fire insurance company, duly organized and carrying on business in the county of Broome on the assessment plan. On March 25, 1932, on the written application of Carlton Tallmadge, it issued to him its policy whereby it agreed to insure him against all direct loss or damage by fire (except as otherwise in the policy provided), from that time to March 25, 1935, in an amount not exceeding $4,615. It covered farm buildings in the town of Sanford and certain personal property, and, among other things, stated: " Loss if any ' should occur payable to Mr. Earl S. Lobdell as his interest ' may appear, subject to the conditions of this policy."

At the time when the policy was issued, the title, rights and interests in the property insured and in the policy were thus: William A. Latham had the record title to the farm, holding it in trust for said Carlton Tallmadge, to whom he had sold the farm and certain personal property thereon under a contract of sale dated February

16, 1926, in which he agreed to convey the property to Tallmadge on the payment of the amounts therein provided. On March 21, 1931, Latham assigned his interest in the land contract to the plaintiff who is now the owner thereof and the same person mentioned in the policy as Earl S. Lobdell.

On December 4, 1932, the dwelling house on the farm in question and its contents were destroyed by fire. The policy was then in force unless for the fact that on October 1, 1932, an assessment had been duly levied upon the members of the defendant company which was payable on or before sixty days from the date of notice of same, viz., on or before December 1, 1932, and that assessment at the time of the fire remained unpaid, although both plaintiff and Tallmadge had received due notice of the same. Prompt notice of the fire with an informal specification of the amount and nature of the loss was given to the defendant, but the latter by its officers and agents, and especially by its regular adjuster, promptly took the ground that the policy was not in force by reason of the non-payment of the asessment and refused to pay the loss or any part of it or to recognize the policy as having any validity in favor of the plaintiff or Tallmadge. The formal proofs of loss required by the policy were not made.

On February 4, 1933, said Tallmadge assigned his interest in said policy of insurance up to $324.06 to the plaintiff and appointed him his attorney with full power to collect his interest therein.

The application for the policy in question, signed by Tallmadge, among other things stated: " I do hereby agree to pay all assessments on or before the date they become due. If I fail to do so I waive all right to recover for any damage if a loss should occur. I also agree that my policy be suspended and I will consider it suspended until the same is fully paid."

The policy itself contained a similar provision; that is, it was in the by-laws which were printed at great length on the back of the policy. But it was also provided that, when the policyholder was excluded from the corporation for non-payment of his assessment or for any reason, the secretary shall cancel or withdraw his policy and enter such cancellation and the date thereof on the records kept in the office of the company, and forthwith serve notice of such cancellation on the person so excluded in the same manner as provided for the service of notice of assessment. It also provided that any person so excluded shall remain liable for the payment of his pro rata share of losses and expenses incurred on or before the date of his exclusion, and the insured is also liable to pay a penalty of fifty per cent besides interest on the assessment if an action is brought against him thereon. He is also entitled to a repayment to him of

an equitable share of any moneys or assessments paid by him before his exclusion. (Meaning, I suppose, if there is a surplus to be divided or apportioned.)

It will be seen that a policyholder in this kind of company stands in a different relation to his insurer than where there is a definite advance premium paid to insure him for a stated time and amount and where the payment of the premium and the issuance of the policy ends the deal unless there is a loss during the life of the policy. Here there are mutual obligations, which cannot be terminated by either party, except in the manner provided by the Insurance Law.

At the time of the fire no steps had been taken, as provided by the company's by-laws and by the Insurance Law (§ 264), to terminate the interest of Tallmadge or of the plaintiff in the defendant company, nor the liability of Tallmadge to the company, nor for a termination of the company's liability under the policy, except that the notice of assessment informed both of them that, unless it (the assessment) was paid within sixty days, the policy in question would be canceled and a new application required before it could be reinstated.

It was held in *Seely* v. *Tioga County Patrons Fire Relief Assn.* (165 App. Div. 685, 688), decided in 1915, when the law in regard to the questions involved was essentially the same as now and the facts were practically the same, that the law did not permit the defendant to make a by-law rendering a policy void for failure of the insured to pay the amount of an assessment at the end of a specified time, and that a notice of assessment of the kind above specified was not adequate to work a termination of forfeiture of the policy without the other necessary steps to that end, prescribed by the statute, had been taken. As stated in the able opinion of Mr. Justice WOODWARD, it was clearly optional with the defendant whether it would rely on its legal remedy against the policy holding member, or terminate the obligation by a compliance with the terms of the statute. " That the plaintiff could not have been deprived of his membership and the benefits of his insurance without the affirmative action of the board of directors or of an executive committee, followed by the act of the secretary in giving the required notice. * * * The corporation was, in effect, loaning money to the plaintiff at the legal rate of interest so long as it took no steps to terminate the contract."

Under the circumstances and in the light of the authority cited, I believe and hold that the policy in suit was in full force on December 4, 1932.

It has been uniformly held that a disclaimer of liability by an insurer is a waiver of the formal proofs which would otherwise

be necessary in order to maintain an action on the policy of insurance. Among the cases so holding are *Orwat* v. *Ætna Ins. Co.* (131 Misc. 141); *Cornell* v. *Travelers' Ins. Co.* (120 App. Div. 459; affd., 192 N. Y. 587), and *Lloyd* v. *North British & Mercantile Insurance Co.* (174 App. Div. 371).

Therefore, the defense that the required formal proofs were not made is not valid. I have signed findings for the plaintiff.