JAMES H. BAYSDON v. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, AND HOME INSURANCE COMPANY.

(Filed 10 April 1963.)

1. Insurance §§ 76, 81—

Under a policy of fire insurance issued for a five-year term with provision for payment of the balance of premium in three yearly installments, with further provision that if insurer elects to cancel the policy for default in any payment it should give insured five days written notice of intention to cancel, *held* insurer may not cancel for delay in payment of the premium installments unless it gives notice to insured of its election to do so in accordance with the terms of the policy, there being no waiver by insured.

2. Insurance § 81—

Insured procured a fire insurance policy for a five-year term and thereafter procured two other policies with intention of canceling the first, but did not so advise the first insurer until after loss. *Held:* Insured's

uncommunicated intention to cancel the policy is insufficient to effect a cancellation by insured, and further does not constitute a waiver by insured of notice by insurer of insurer's election to cancel the policy for default in the payment of premium installments, mutual consent or agreement being essential to the cancellation of a policy by substitution.

**3. Waiver § 2—**

There can be no waiver unless so intended by one party and so understood by the other, or unless one party has acted so as to mislead the other.

**4. Insurance §§ 76, 84—**

Where insurance policies provide that each insurer should not be liable for a greater portion of the loss than the amount its policy bears to the whole insurance on the property, each insurer has the right to maintain that another policy on the property had not been cancelled because of the failure of the insurer therein to give insured notice of cancellation as required by the policy, since the general rule that only insured may complain of want of notice may not be invoked to deprive an interested party of a legal right.

**5. Insurance § 81—**

Where insured finances the balance of the premium on a five-year term policy through a bank under an agreement providing that failure of insured to pay an installment when due should constitute an election upon the part of insured to cancel the insurance, *held*, failure to pay installments when due does not work an automatic cancellation of the policy and there is no cancellation unless the bank, pursuant to authorization, requests insurer to cancel the policy, a communicated request by insured or insured's authorized agent being necessary to a valid cancellation at the request of insured.

**6. Appeal and Error § 49—**

A holding by the court that the policy of insurance in question was not in force at the time of the loss in suit is a conclusion of law and not a finding of fact, and when such conclusion is not supported by the actual findings, the cause must be remanded.

APPEAL by defendant Nationwide Mutual Fire Insurance Company from *Parker, J.,* November 1962 Civil Term of ONSLOW.

This is an action to recover upon fire insurance policies for loss suffered by plaintiff.

The complaint alleges in substance (numbering ours):

(1). Plaintiff's property in Onslow County, a business building and contents, was destroyed by fire on 12 February 1962. The amount of the loss: building $9,276. 33, contents $5,135.00.

(2). Plaintiff had procured fire insurance policies, each for a term of 5 years, as follows: (a) Great American Insurance Company (Great

American), on building $6,000, contents $1,000, effective 11 January 1960, expiration 11 January 1965; (b) Home Insurance Company (Home), building $6,000, contents $2,000, effective 16 December 1960, expiration 16 December 1965; and (c) Nationwide Mutual Fire Insurance Company (Nationwide), on building $15,000, contents $5,000, effective 11 January 1962, expiration 11 January 1967. Copies of the policies are attached to the complaint as exhibits.

(3). The premium for each of the three policies was payable in installments, the first installment to be paid at the inception of the policy, and subsequent installments annually thereafter. Plaintiff paid the inception installments on all of the polices, and the installment on the Great American policy which was due 11 January 1961. Plaintiff was in default on premium installments due Great American and Home at the time of the fire, 12 February 1962.

(4). Plaintiff fully intended to cancel the Great American and Home policies when he obtained the Nationwide policy, but did not so advise Great American and Home or their agents until after the fire.

(5). Nationwide has paid plaintiff $5,153.00 and $3,409.38 on account of the building and contents losses respectively, being the pro rata amounts its coverage bears to the totals of the three policies.

(6). Great American and Home refuse to pay any amount, and contend that their polices were not in force.

(7). Plaintiff is entitled to recover of Nationwide or Great American and Home the unpaid portion of his loss.

Nationwide admits the material allegations of the complaint, and avers that it was liable only for the amounts paid by it and that the Great American and Home policies were in force at the time of the loss.

Great American and Home, in separate answers, admit generally the allegations of the complaint, and allege (a) that plaintiff did not pay premium installments when due, and did not ask, or intend to ask, for the extension and renewals of their policies, (b) that plaintiff agreed with Nationwide's agent to have Nationwide issue its policy in substitution for the policies of Great American and Home, and (c) that plantiff financed the policies of Great American and Home under a "Premium Budget Plan" through the Chase Manhattan Bank, which Plan provides "that failure to pay any installment . . . when due, constitutes an election on the part of . . . insured to cancel this (sic) insurance."

Each of the three policies contains the following standard provisions:

(1). "This policy shall be cancelled at any time at the request of the insured. . . . This policy may be cancelled at any time by this Company by giving the insured a five days' written notice of cancellation. . . ."

(2). "No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing and added hereto."

(3). "This Company shall not be liable for a greater portion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved. . . ."

The Great American and Home policies contain endorsements entitled "Installment Premium Payment Plan," which provide *inter alia*: "If the insured is in default of any payment shown in this policy and the Company elects to cancel the policy, notice of cancellation shall be in accordance with the policy conditions. . . ."

The parties waived trial by jury and agreed that the judge find the facts, make conclusions of law, and enter judgment. The record does not show that there were any facts stipulated or any oral evidence offered or received. The court apparently proceeded upon the admissions in the pleadings, the terms of the policies and the arguments of counsel.

In addition to matters clearly not in dispute, the court found facts substantially as follows: (1) Plaintiff did not intend to continue in force the Great American and Home policies, but intended to replace them with the Nationwide policy; (2) Nationwide has agreed to pay the balance of plaintiff's loss if it is finally determined by a court of· competent jurisdiction that it is liable therefor; and (3) the Great American and Home policies were not in force at the time of the loss.

The court concluded that plaintiff is entitled to recover of Nationwide the balance of his loss — $5,913.95 with interest. Judgment was entered accordingly. Nationwide excepts and appeals.

*Ellis, Hooper & Warlick for plaintiff, appellee.*

*Summersill & Browning for defendant Nationwide Mutual Fire Insurance Company, appellant.*

*Poisson, Marshall, Barnhill & Williams for defendants Great American Insurance Company and Home Insurance Company, appellees.*

MOORE, J. Appellant Nationwide's assignments of error require us to decide whether the findings of fact support and justify the con-

clusion of the trial court that the Great American and Home policies "were not in force at the time of the loss."

Nationwide admits that its policy was in force. The Great American and Home policies were issued for five year terms which had not expired at the time of the loss. The premium installment on the Great American policy was thirty-two days past due, and on the Home policy fifty-eight days past due. But there is no automatic suspension or forfeiture of insurance for nonpayment of premiums or assessments, where insurer remains liable following such nonpayment unless it takes the necessary steps to avoid the policy. 45 C.J.S., Insurance, s. 542, p. 280; *Farmers Mut. Fire Ins. Co. of Greene County v. Maloney,* 117 S.W. 2d 757 (Tenn. 1938) ; *Federal Land Bank of Omaha v. Farmers' Mut. Ins. Ass'n.,* 253 N.W. 52 (Iowa 1934) ; *Lobdell v. Broome County Farmers' Fire Relief Ass'n.,* 271 N.Y.S. 272 (1934). All of the policies in the instant case are standard policies containing the provisions required by G.S. 58-176(c). They do not provide for automatic termination of the insurance upon default in the payment of premium installments. Indeed, they provide to the contrary — that "If the insured is in default of any payment shown in this policy and the Company elects to cancel the policy, notice of cancellation shall be in accordance with the policy provisions." The policy provisions with respect to cancellation are that the policy may be cancelled at any time at the request of insured or by the insurer giving the insured a five days' written notice of intention to cancel.

Appellees suggest that on each premium installment date there is in substance a renewal or extension of insurance coverage upon payment of the installment, and default automatically prevents further coverage. The rules applicable to renewals are inapposite here, for the Great American and Home policies were for five year terms, and the terms were current at the time of the loss. Appellees also urge that payment of premium installments was a condition precedent to continued coverage, and failure to pay terminated coverage. We find nothing in the insurance contracts to support this view. As we have already noted, the contracts provide that to cancel upon default of installment payments insurer is required to give five days' written notice.

There is no finding, or even suggestion, that insured requested cancellation or that Great American or Home gave any written notice of cancellation. Insured intended to cancel these policies when he acquired the Nationwide policy, but did not so advise Great American or Home until after the loss. To effect a cancellation by insured there must be communicated to the insurer a definite and unconditional request therefor by insured or his authorized agent. A mere intention

to cancel, not communicated to insurer, is not sufficient to effect a cancellation by the insured. *Manufacturing Co. v. Assurance Co.,* 161 N.C. 88, 76 S.E. 865; *Dyche v. Bostian,* 229 S.W. 2d 25, aff'd 233 S.W. 721 (Mo. 1950); 6 Appleman, Insurance Law and Practice (1942), s. 4226, p. 793; 3 Richards, Insurance (5th Ed.), s. 532, p. 1765. To effect a cancellation by insurer the five days' notice provision must be strictly complied with. Unless the requirement is waived by insured, an insurer must comply with the terms of the policy or statute that it give notice of its intention to cancel. *Dawson v. Insurance Co.,* 192 N.C. 312, 135 S.E. 34; 45 C.J.S., Insurance, s. 450, p. 84.

To sustain the court's conclusion that the Great American and Home policies were not in force at the time of the loss, appellees rely mainly upon the finding that insured did not intend to continue these policies in force, but intended to replace them with the Nationwide policy.

Some writers on the subject have pronounced a rule that generally the procurement of new insurance on property for a term commencing before the expiration of existing insurance thereon, and with intent to have the new insurance replace the existing insurance and without intent to acquire additional insurance, constitutes an effective voluntary cancellation of the existing insurance, despite the physical possession by insured of the original policy. 45 C.J.S., Insurance, s. 458, p. 118; 6 Appleman, Insurance Law and Practice (1942), ss. 4196 and 4225; 27 California Jurisprudence 2d, Insurance, s. 293. We hereinafter refer to this as the "substitution rule."

The case most often cited in support of the rule is *Bache v. Great Lakes Ins. Co.,* 276 P. 549 (Wash. 1929). In our opinion this case is not directly in point. The property there in question was mortgaged and the mortgage contained an insurance clause requiring the insurance policy to remain in possession of the mortgagee and authorizing mortgagee to procure and maintain insurance if the owners failed to do so. The original insurer, desiring to be relieved of the risk, gave mortgagee, but not the owners, a five days' written notice of its intention to cancel. Mortgagee, on the day it received the notice, procured a substitute policy from another company. A fire loss occurred before the expiration of the five days. The owners knew nothing of the cancellation notice or the substitute insurance until after the loss. It was held that the original policy, and not the substitute policy, was in force, as to the owners, for the reason that the mortgagee had no authority to agree to a cancellation of the original insurance or to procure substitute insurance. The case turned on the question of agency. The court proceeded on a stipulation by counsel that the acquisition

of substitute insurance by the owners or their agent would effect a cancellation. The court did not reach the point of applying the substitution rule to the facts, and did not concern itself with any discussion of the rationale or essential elements of the rule.

*Glens Falls Insurance Co. v. Founders' Insurance Co.*, 25 Cal. Rptr. 753 (1962), is in all material aspects analagous to the case at bar. Insured had a Glens Falls policy — the cancellation provisions were the same as in standard North Carolina policies. She had a disagreement with Glens Falls concerning a loss on other property covered by another Glens Falls policy. She called the insurance broker having the Glens Falls business in that locality and told him she would cancel all her policies and place her business with another broker if her claim was not settled. She later had another broker intervene in her behalf, but he was unable to bring about a settlement. She then told him to see that her Glens Falls policies were cancelled and to obtain replacement policies with some other company. He talked with the original broker but did not cancel the Glens Falls policies; he procured insurance from Founders' in the same amount as the Glens Falls policies. Glens Falls continued to carry the insurance as in force and gave no notice of cancellation. Insured intended the Founders' policy as a replacement of the Glens Falls insurance, and did not intend to carry the former as additional insurance; she did not so notify Glens Falls and did not request cancellation. Five months after Founders' policy was acquired she suffered a fire loss. It was adjudged that Glens Falls and Founders' share the loss pro rata. The court observed that neither insured nor Glens Falls complied with policy provisions for cancellation, and stated: "An intention to cancel a policy does not *ex proprio vigore* cancel it." It then discussed the substitution rule and reviewed in considerable detail the leading cases from other jurisdictions involving this principle, and concluded that in all cases in which the substitution rule was applied there was what amounted to a cancellation by mutual consent and that cancellation by substitution of a policy may not be unilaterally effected. The following excerpts from the opinion seem to us to be sound statements of pertinent legal principles:

"It would appear, therefore, that unless another method of cancellation has been evolved by decisional law as contended by respondent, *i.e.*, cancellation by substituted insurance arising out of the unilateral intent of the insured uncommunicated to the company, an insurance contract cannot be terminated or extinguished except as provided by its terms or pursuant to the provisions of law which govern contracts generally and as implemented by other provisions of law.

"In our opinion, except for the remedial rights of rescission afforded one of the parties to a contract such as in the instances of fraud, deceit, mistake, etc., . . . an insurance contract can only be cancelled pursuant to its terms or by mutual consent. . . . (T)he mere procuring of substituted insurance with the intent to replace existing insurance and without the intent to thereby acquire additional insurance does not *per se* work a cancelling of the existing insurance. . . . (I)n order for cancellation to take place by the substitution of one policy for another it must be done by mutual consent or agreement."

The opinion in the *Glens Falls* case either reviews or cites the leading cases throughout the country and no useful purpose can be served by listing them here.

It comes to this — an insurance policy is a contract; a contract may be rescinded for fraud or mutual mistake, it may be terminated in accordance with the provisions thereof or by *mutual consent*, a meeting of the minds, but one of the parties may not terminate it without the assent of the other unless the contract so provides.

Great American and Home carried the insurance as in force. They had no knowledge of the existence of the Nationwide policy until after the loss, and they did not assent to the substitution of this policy for theirs until after the loss. Procuring additional insurance without requesting the original insurer to cancel its policy does not terminate the policy. 6 Appleman, s. 4226, p. 797; *Scheel v. German-American Ins. Co.,* 76 A. 507 (Pa. 1910); *Glens Falls Insurance Co. v. Founders' Insurance Co., supra.*

A party may waive a provision of a contract. A provision in a policy that insurer must give notice to insured as a condition precedent to cancellation is for insured's benefit and may be waived by him. *Wilson v. Insurance Co.,* 206 N.C. 635, 174 S.E. 745; *Dawson v. Insurance Co., supra.* The burden is on insurer to show a waiver by the insured, and it must appear clearly that the insured expressly or impliedly waived notice if he is to be held bound by such waiver. 29 Am. Jur., Insurance, s. 392, p. 744. There appears on the present record no facts from which a waiver of notice may be inferred, and the court made no finding that notice was waived. There can be no waiver unless so intended by one party, and so understood by the other, or one party has so acted as to mislead the other. *Manufacturing Co. v. Lefkowitz,* 204 N.C. 449, 453, 168 S.E. 517. In a sense, waiver and mutual consent are one and the same thing.

Appellees contend that Nationwide has no standing to assert lack of notice to insured by Great American and Home since the five days' written notice provision is for the benefit of insured. And it has been

stated that "none except the insured can take advantage of the want of notice." 29 Am. Jur., Insurance, s. 382, p. 733. But this rule has no application in the situation presently presented; Nationwide may certainly assert its rights under its contract. When a loss occurs the rights of the parties to a fire insurance policy become fixed. 45 C.J.S., Insurance, s. 444(b), p. 72. Nationwide's contract with insured provides that Nationwide "shall not be liable for a greater portion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved." This gives it the right to have determined in this action whether there was at the time of the loss other coverage, what its liability is, and to insist that other coverage be not extinguished after the loss by acts of the insured which will cast the entire loss on it. Insured may, of course, release any of his debtors at any time if he desires, but if he releases, waives or otherwise terminates insurance coverage after loss, the loss falls upon him *pro tanto.*

Great American and Home allege in their answers that plaintiff financed the policies issued by them under a "Premium Budget Plan" through the Chase Manhattan Bank, which plan provides that failure to pay an installment when due constitutes an election on the part of insured to cancel the insurance. These allegations are deemed denied, and the court made no findings with respect thereto. These provisions standing alone would not work an automatic cancellation of the policy upon failure to pay. It would seem that at the trial below some of the facts were not fully developed. The questions, whether Chase Manhattan bank had authority to request cancellation upon default, and what action, if any, the Bank took when plaintiff failed to pay, remain unanswered. See *Daniels v. Insurance Co.,* 258 N.C. 660, 129 S.E. 2d 314. It may be there are other facts which should be brought to light in order that the correct determination may be made.

The purported finding of fact by the court that the Great American and Home policies were not in force at the time of the loss is but a conclusion of law. It is not supported by the actual findings of fact. The case is remanded for rehearing.

Error and remanded.