**A. J. BUMB, as Receiver of State Industries, etc., Plaintiff,**

v.

**AMERICAN HOME ASSURANCE COMPANY et al., Defendants.**

**No. 63–877–FW.**

United States District Court
S. D. California,
Central Division.

Aug. 5, 1965.

Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for plaintiff.

Long & Levit, Los Angeles, Cal., for defendants American Home Assurance Co., Sun Ins. Office Limited and Transit Cas. Co.

Bolton, Groof & Dunne, Los Angeles, Cal., for defendant The Home Ins. Co.

Johnson, Bates & Sheffield, Los Angeles, Cal., for cross-defendants American Independent Agencies, Bayly, Martin & Fay, Inc., Harold Smith and Edward Fitch.

WHELAN, District Judge.

Federal jurisdiction to entertain this action is predicated upon diversity of citizenship between the parties, and upon sections 2 and 23 of the Bankruptcy Act, 11 U.S.C. §§ 11 and 46. Plaintiff is the receiver of State Industries (hereinafter State), in pending bankruptcy proceedings (under Chapter XI of the Bankruptcy Act). State, a California corporation allegedly insured under policies issued by the defendant companies (and assignee of loss payees named in the policies), sued Home Insurance Company (hereinafter Home) and American Home Insurance Company (hereinafter American), both New York corporations, Transit Casualty Company (hereinafter Transit), a Missouri corporation, and Sun Insurance Office, Ltd., (hereinafter Sun), a British corporation, to recover for a loss sustained by fire to State's equipment, fixtures, stock, and other personalty located upon its business premises at 4019 Medford Street, Los Angeles, California, on October 12, 1962. State's stock loss after salvage was stipulated by the parties to be $132,827.17. This loss was paid in full on January 31, 1963,

to State by Transit, Sun, and American who now counterclaim against State for overpayment of $17,265.55, representing Home's alleged pro rata obligation to contribute to the stock loss, and also cross-claim against Home for such contribution.

Home cross-claimed against American, Transit, Sun, Bayly, Martin and Fay, Harold Smith and Edward Fitch for damages for their actions in connection with the failure of State to make payments to its financing company on account of premiums paid by it to Home, which failure led to financing company's request to Home for refund of premium. Plaintiff contends by his complaint that Home is liable for its share of an equipment loss alleged to total $803,181.85. However, as to insurers Transit, American, and Sun, plaintiff and the latter three insurers agreed on May 31, 1963, that $702,000.00 is the amount of the equipment loss and State accepted partial payment of that amount from each of the signatory insurers in the amount of $189,574.32 (or a total of $568,722.95), the insurers reserving the right to recover any overpayment attributable to subsequent court determination, if any, that Home's liability for the equipment loss exceeded $133,277.05, the balance of the stipulated equipment loss which remains unpaid. Plaintiff maintains that it is entitled to collect this sum of $133,277.05 either from Home or from the other defendant insurers, as the Court may determine.

On March 29, 1965, plaintiff and Home agreed by stipulation that the amount of State's equipment loss is $702,000.00.

The policies of American, Transit, and Sun were concededly in effect at the time of the loss. Home, however, contends that its two policies were cancelled prior to the date of loss. The facts in dispute in this regard are as follows:

On November 1, 1961, Home, through Van F. Joy & Co., agent for Home and insurance broker for State, executed and delivered to State policy No. 9361701, a three-year California standard fire insurance policy covering State's "furni-ture, fixtures and equipment and tenant improvements and betterments" in the amount of $312,000.00 situated at five designated locations in Los Angeles, California, including the premises on Medford Street at which the fire in question occurred. In addition to the provision for pro rata liability specified by California law, Cal.Ins.Code, § 2071, the policy contained an excess insurance clause providing in pertinent part:

> No item of this policy shall attach to or become insurance upon any property, included within the description of such item, which at the time of any loss
>
> (a) is more specifically described and covered under * * * any other policy carried by or in the name of the insured named herein,
>
> * * * * * *
>
> until the liability of insurance described under (a) * * * has first been exhausted, and shall then cover only the excess of value of such property over and above the amount payable under such other insurance, whether collectible or not. * * *

On the same day, Home issued to State a second policy, No. 9361702, a provisional monthly reporting policy covering the insured's "stock of goods, wares and merchandise of every description" in the provisional amount of $150,000.00 located on the same five premises specified in policy No. 9361701. In addition to the standard pro rata clause heretofore set forth, the policy distinguished from contributing insurance (written upon the policy's premium adjustment form) all other insurance, which it termed "specific insurance," further designating specific insurance covering the identical property at the identical locations described in the policy as "creditable specific insurance," and qualifying its undertaking by an excess clause providing in pertinent part:

> This policy does not attach to or become insurance against any peril upon property herein described which at the time of any loss is in-

sured as defined by the specific insurance clause, until the liability of such specific insurance has been exhausted, and then shall cover only such loss as may exceed the amount due from such specific insurance (whether collectible or not) after application of any contribution, coinsurance, average or distribution or other clauses contained in policies of such specific insurance affecting the amount collectible thereunder, not however, exceeding the limits as set forth herein.

The parties are in accord that the Home stock and equipment policies were in effect until and including August 30, 1962. Thereafter, however, there occurred a sequence of events which Home contends and the other defendants (and plaintiff) deny constituted cancellation of its policies prior to the loss.

The evidence establishes that in early 1962 State could no longer obtain surety bonds necessary to its business through Mr. Van F. Joy, its long time insurance broker and representative of Home. State obtained such bonds through Bayly, Martin and Fay, brokers, and agreed in the Spring of 1962 to give the latter firm a large portion of its insurance business, including its fire insurance business. State's president testified he decided to cancel State's policies with Home and to replace them with equivalent coverage to be provided through Bayly, Martin and Fay. Discussions to accomplish this end continued between Mr. Unan, State's controller, pursuant to his directions from State's president, and Bayly, Martin and Fay through August 1962; the negotiations culminated in the issuance of three new policies, obtained through Bayly, Martin and Fay, and issued to State by Transit, American, and Sun respectively. The policies were effective September 1, 1962, although not delivered to State until October 4, 1962.

Each of these latter standard fire insurance policies, identical in form, undertook to insure State against loss by fire to "all property of an insurable nature, both real and personal," up to $700,000.-00 in value at the same five premises named in the Home policies. In addition to the standard pro rata clause previously set forth, to each was appended an "Agreed Amount Clause" limiting the insurer's liability to

no greater proportion thereof than the amount hereby insured bears to $2,100,000.00 nor for more than the proportion which this policy bears to the total amount of insurance thereon.

Meanwhile State ceased to make payments to AFCO, its premium financing company, on the Home policies; AFCO thereupon sent its "Advice of Termination" to State, and Mr. Joy, and a "Request for Refund" to Home at the end of August 1962, indicating that it had terminated its premium financing contract with State effective August 30, 1962.

No transactions transpired during this interval between State and Home itself.

And while at trial State's controller testified that he told Mr. Joy in a conversation held prior to the fire that State wanted its Home policies cancelled, this testimony is at variance both with the controller's previous deposition in which he indicated that he had no recollection of having directed Mr. Joy to cancel the Home policies and with a letter dated September 20, 1962, received by the controller from Mr. Joy subsequent to the purported conversation inquiring whether it was State's intention to cancel its Home policies and requesting that if such was State's intention that the policies be returned to Van F. Joy & Company with a request for cancellation. The controller forwarded Mr. Joy's letter to Bayly, Martin and Fay (to whom the Home policies had been entrusted) five days later asking them to "kindly arrange to have this matter handled in a manner compatible with Mr. Joy's request."

State's controller testified that he intended this directive to instruct Bayly, Martin and Fay to return the Home policies to Mr. Joy for cancellation. However, a representative of Bayly, Martin and Fay testified that he had informed

State's controller in July or August of 1962 that State would receive a larger return premium if it merely ceased payment to AFCO which would in turn terminate State's financing contract with AFCO and so notify Home which would then itself cancel the policies on terms provided by law which were more advantageous to the insured. He instructed the controller that in that event there would be temporary overlapping of coverage under old and new policies until Home decided to cancel its policies for default in payment of premium. Consistent with this purported advice, the representative testified that he phoned State's controller upon receipt of the Joy letter from the controller and informed him that no action was required by State.

State's officers and agents, a few days subsequent to the fire, gave the Transit, American, and Sun policies to the public adjuster State hired to appraise its loss and told him that they represented the sum of State's fire insurance.

No evidence was presented at trial, however, which would indicate any understanding or agreement on the part of Home prior to the State loss that its policies had been cancelled thereto. Home's supervisor of accounts for the Pacific Coast area during the period in question testified that Home's usual procedure upon receiving notice of default in payment and termination of a premium financing contract with the insured and request for refund of premium was to forward such request to the field office, in this case Los Angeles, whose duty it was then to send out cancellation notices and to complete cancellation of the policy.

In this case Home's San Francisco office received AFCO's request for refund on August 31, 1962, a photostat of which was forwarded to the Los Angeles field office on September 5, 1962. It appears that Home took no further action respecting its policies covering State until its San Francisco office received a second reminder by letter of September 24, 1962, from AFCO that State's financing

had been terminated as of August and a request that premium refund be expedited, a photostat of which letter was thereupon sent by the San Francisco office to the Los Angeles office of Home with a notation that copies of the daily reports concerning the policies in question sent to the San Francisco office showed no evidence of cancellation, and a request that the Los Angeles office "do the necessaries."

Home's Los Angeles office manager during the period in controversy testified at his deposition that he knew of no further action taken by his office prior to the fire with reference to calculation of the return premium on the policies covering State, nor did he know of any action taken by Home prior to the fire to determine whether or not its policies had been cancelled. It was admitted at trial by Home's Claims Manager for the Pacific Coast area that no formal cancellation had occurred and that Home's decision to resist State's claim was predicated upon Home's learning from Mr. Joy after the fire that State had intended to replace Home's policies with others and that such other policies had become effective prior to the fire. Date of cancellation was thereafter noted in Home's records as effective August 30, 1962.

## CANCELLATION OF THE HOME POLICIES

■ The convincing evidence establishes that State did not prior to the fire request cancellation of the Home policies and that Home did not prior to the fire consider that cancellation had been effected; and the Court concludes that Home has not met the burden of proof (K. C. Working Chemical Co. v. Eureka-Security Fire & Marine Ins. Co., 82 Cal.App.2d 120, 130, 185 P.2d 832 (1947)) to establish the defense of cancellation either unilaterally by the insured or by mutual agreement between State and Home prior to State's loss to substitute other fire insurance policies for the Home stock and equipment policies.

514

## UNILATERAL CANCELLATION

■ The mandatory standard fire insurance provision for unilateral cancellation of insurance by the insured under California law, § 2071, Cal.Ins.Code, incorporated in each of Home's policies provides in pertinent part:

This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.

The sole requirement for such cancellation is an unequivocal and unconditional request for immediate cancellation "actually communicated to the company." Glens Falls Ins. Co. v. Founders' Ins. Co., 209 Cal.App.2d 157, 165, 25 Cal.Rptr. 753, 3 A.L.R.3d 1058 (1962). When this is done cancellation is effective from the instant the request is communicated.

■ In the instant case, however, assuming, without deciding, that a request for cancellation communicated by a representative of the insured to Home's representative, Mr. Joy, would be a request effectively communicated to Home itself, the weight of the evidence establishes that there was no such unequivocal and unconditional request.

The letter from Van F. Joy to State dated September 20, 1962, inquiring if it was State's intention to cancel its Home's policies and indicating that if such was State's intention, the policies should be returned to Van F. Joy with a request for their cancellation, is a clear indication that no request for cancellation had theretofore been made by State. Thereafter, and prior to the fire, there was no communication between State and Van F. Joy or between State and Home.

## CANCELLATION BY MUTUAL AGREEMENT

■ Cancellation by substitution of one policy for another may be effected by mutual agreement of the parties, either express or implied from the circumstances. Glens Falls Ins. Co., supra at

168, 170, 25 Cal.Rptr. 753; Baysdon v. Nationwide Mut. Fire Ins. Co., 259 N.C. 181, 130 S.E.2d 311 (1963). However, the mere procurement of additional insurance without requesting the original insurer to cancel its policy does not terminate the policy. Ibid. As heretofore mentioned, evidence that State adequately communicated its intention to cancel its Home policies to any agent of Home is not persuasive. The testimony of representatives of Bayly, Martin and Fay concerning the prediction of eventual cancellation of the policies by Home itself for nonpayment of premiums with financial advantage to State explains the failure of State to notify Home agents of its desire to cancel the policies. Further, evidence at trial was devoid of any showing that Home learned of and acquiesced in the effective replacement of its policies by those of Transit, American and Sun prior to the fire. While not conclusively negativing, of course, any mutual agreement of substitution of policies which Home contends existed prior to the fire, the facts that State had never returned the Home policies to its broker for cancellation; that Home's records prior to the fire showed no evidence of cancellation of these policies; and that Home had not at that time even calculated the premium refund due incident to cancellation buttress the Court's conclusion that in fact no mutual understanding of cancellation by substitution was in existence prior to the fire between representatives of Home and State. Home could not bind State to any such agreement by acquiescence after the loss. Cf., Chase v. National Indemnity Co., 129 Cal.App.2d 853, 860–861, 278 P.2d 68 (1954). Accordingly, the Court concludes that Home's policies covering State's stock and equipment losses were in force on October 12, 1962, when the fire in question occurred.

■ The Court rejects the theory of Home that the full payment of State's stock loss by Transit, American, and Sun estops such companies to deny that Home's policies had been cancelled prior to the fire loss. There was no evidence

to show that Home was in any way misled to its prejudice by reliance upon such action as is required to constitute estoppel under California law. See Tomerlin v. Canadian Indemnity Co., 61 Cal.2d 638, 646–648, 39 Cal.Rptr. 731, 394 P.2d 571 (1964).

### FULFILLMENT BY STATE OF CONDITIONS PRECEDENT TO RECOVERY UNDER THE HOME POLICIES

■ Each of the Home policies at issue herein contained the California Standard Fire Insurance provision entitled "Requirements in case loss occurs" making it prerequisite to the insured's recovery on the policy to have given written notice of loss to the company "without unnecessary delay," followed "forthwith" by a complete inventory of the damage suffered, and "within 60 days after the loss, unless such time is extended in writing by this company," to have rendered proof of loss to the company containing certain specified information. § 2071, Cal.Ins.Code. It was therefore incumbent upon plaintiff to establish compliance with such conditions precedent or to establish the existence of facts constituting waiver of compliance with them by the insurer.

■■ Written notice of loss was seasonably given to Home by State through its adjuster. While there was no evidence that State filed written proofs of loss as required by the Home policies with Home sufficient to sustain State's burden of proof that it had complied with the policy, the Court finds that there was a repudiation by Home of any liability under the policies, which repudiation constituted a waiver by Home of the requirements as to notice and proof of loss. Courts look favorably upon claims of waiver in order to avoid forfeitures. Beasley v. Pacific Indemnity Co., 200 Cal.App.2d 207, 209, 19 Cal. Rptr. 299 (1962); Lagomarsino v. San Jose Abstract & Title Ins. Co., 178 Cal. App.2d 455, 459–460, 3 Cal.Rptr. 80 (1960); Chase v. National Indemnity Co., supra, 129 Cal.App.2d at 864–865,

278 P.2d 68; Paez v. Mutual Indemnity Accident, Health & Life Ins. Co., 116 Cal.App. 654, 659–660, 3 P.2d 69 (1931).

■ Inasmuch as there is no evidence that Home made prompt and specific objection to State concerning delay in presenting proof of loss, Home has waived its right to deny recovery upon such ground at trial. Sec. 554, Cal.Ins.Code; Cf., Lagomarsino v. San Jose Abstract & Title Ins. Co., supra.

### LIABILITY OF DEFENDANT INSURERS UNDER THEIR RESPECTIVE POLICIES

■ At the time of State's fire there were then in effect five policies covering its stock and equipment at five business locations including the one at which the loss occurred. The three policies of Transit, American, and Sun covered "all property of an insurable nature," including, of course, State's stock and equipment. The Home equipment and stock policies respectively covered State's "furniture, fixtures and equipment" and its "stock of goods." All policies contained pro rata clauses limiting the insurer's liability in any case to the proportion of the loss which the face value of its policy bore to the whole or total insurance from all sources covering the same property. In addition, the two Home policies each contained combination escape and excess clauses providing that the policy did not insure the property described in the event that it was insured by other insurance at the time of loss, except in the amount (up to the limits of the Home policy) that the loss might exceed the amount payable under such other insurance. The excess clause in the Home equipment policy by its terms (set forth earlier in this opinion) operated to evade liability only insofar as property which it insured was also insured by other policies more specifically describing it. Inasmuch as it cannot be said that "all property of an insurable nature" more specifically describes "furniture, fixtures and equipment," the excess clause contained in the Home equipment policy does not apply

here and Home is liable for equipment loss in accordance with the terms of its policy covering such loss. Under the appropriate rule utilized in the insurance trade for the determination of the liability under such a policy as that of Home, as testified to by State's adjuster, the liability of Home on the equipment loss is $112,011.33. Plaintiff is entitled to recover such sum from Home together with interest from the date hereinafter referred to.

Plaintiff is also entitled to recover from each of the other insurers the sum of $7,088.57 on account of equipment loss.

The excess clause of the Home stock policy (heretofore referred to), however, by its terms does not apply until all other insurance covering the stock insured by it has been exhausted.

■ Such interpretation is further buttressed by the fact that the policy, being provisional or "floating" in nature, is of a type understood in the insurance industry to be designed to furnish additional coverage at minimal cost to supplement the more expensive coverage obtained by other fixed insurance on the same property after such insurance has been exhausted. See Gillies v. Michigan Millers Mut. Fire Ins. Co., 98 Cal.App.2d 743, 747, 221 P.2d 272 (1950). Such interpretation is also supported by the expert testimony of State's adjuster. Accordingly, since the amount of State's stock loss did not exhaust its coverage under other insurance provided by Transit, American, and Sun policies, Home is not obligated to contribute to State's stock loss, nor have Transit, American, and Sun overpaid State by such amount in making full payment among themselves of that loss.

## STATE'S RIGHT TO INTEREST ON ITS RECOVERY UNDER THE HOME EQUIPMENT POLICY

■ California statute provides for the recovery of interest on damages "certain, or capable of being made certain by calculation" from the day on which the right to receive them vested. § 3287, Cal. Civ.Code. California courts and federal courts following them have interpreted this provision to permit recovery of interest on damages recovered by an insured from an insurer from the date on which payment was due under the terms of the insurance contract where the insured had by such time furnished the insurer with data from which its loss could be ascertained and where such data was not substantially disputed by the insurer or where the court's subsequent determination of loss corroborated the reliability of the data furnished the insurer. See Koyer v. Detroit Fire & Marine Ins. Co., 9 Cal.2d 336, 345–347, 70 P.2d 927 (1937); Chase v. National Indemnity Co., 129 Cal.App.2d 853, 865, 278 P.2d 68 (1954); Jacobs v. Farmers' Mut. Fire Ins. Co., 5 Cal.App.2d 1, 11–12, 41 P.2d 960 (1935); Carlstrom v. Agricultural Ins. Co., 180 F.2d 286 (C.A.9 1950); National Union Fire Ins. Co. v. California Cotton Credit Corp., 76 F.2d 279, 289–291 (C.A.9 1935).

■ It appears that recovery of interest is not defeated by the failure of the insured to file proofs of loss where the insurer has waived defense on that ground to recovery in general, where the amount of the loss is otherwise susceptible of reliable estimate. Chase v. National Indemnity Co., 129 Cal.App.2d 853, 864–865, 278 P.2d 68 (1954); Jacobs v. Farmers' Mut. Fire Ins. Co., supra.

■ In this case, however, it appears not only that State failed to furnish Home with proofs of loss, but that prior to repudiation of liability it had not otherwise furnished Home with reasonably complete information from which its equipment loss might have been determined. More important, there has existed a substantial discrepancy in the amount of its equipment loss $803,181.85) asserted by State against Home and the amount of that loss contended for by Home (not more than $636,664.00) as reflected in Home's contentions of fact filed January 4, 1965. Only on March 29, 1965, did plaintiff and Home agree that the loss was $702,000.00. In such

circumstances, the amount of Home's liability remained uncertain and not susceptible of calculation until determined by that agreement and interest should run only from the date of such agreement. National Union Fire Ins. Co. v. California Cotton Credit Corp., 76 F.2d 279, 291 (C.A.9 1935); see Carlstrom v. Agricultural Ins. Co., 180 F.2d 286 (C.A. 9 1950); cf., Benton v. Cravens, Dargan & Co., 188 Cal.App.2d 637, 645, 10 Cal. Rptr. 740 (1961).

### THE CROSS-CLAIMS OF TRANSIT, SUN, AND AMERICAN

For the reasons heretofore stated Transit, Sun, and American are not entitled to recover anything on their cross-claims against plaintiff or Home.

### THE CROSS-CLAIM OF HOME

For the reason that State did not cancel the Home policies, and that none of the cross-defendants on Home's cross-claim was guilty of any actionable wrong towards Home, Home is not entitled to recover anything on its cross-claim.

Counsel for plaintiff is directed to prepare findings of fact, conclusions of law and judgment consistent herewith.