VIRGINIA MUTUAL INSURANCE COMPANY and Mill Owners Mutual Insurance Company, Appellees,

v.

INSURANCE COMPANY OF NORTH AMERICA and Indiana Lumbermen's Mutual Insurance Company, Appellants.

No. 11210.

United States Court of Appeals Fourth Circuit.

Argued June 1, 1967.

Decided Sept. 11, 1967.

John M. Minor, Winston-Salem, N. C. (William K. Davis, and Deal, Hutchins & Minor, Winston-Salem, N. C., on brief), for appellants.

J. Robert Elster, Winston-Salem, N. C. (Ralph M. Stockton, Jr., and Hudson, Ferrell, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BRYAN and WINTER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The question in this declaratory judgment action is whether a fire loss admittedly covered by the plaintiffs' policies was also, as they charge, covered by the defendants' policies. The District Court declared for the plaintiff-insurers, holding the defendant companies as co-insurers. They appeal. In our opinion the defendants' policies had been cancelled before the fire occurred and they cannot be required to contribute to the owner's indemnification. Our order will di-

rect acquittance of the appellants of any liability.

Virginia Mutual Insurance Company and Mill Owners Mutual Insurance Company were the plaintiffs. Besides the owner of the destroyed property, Loton E. Tharpe, and his mortgagee bank, the defendants were the Insurance Company of North America and the Indiana Lumbermen's Mutual Insurance Company. Jurisdiction rested on requisite diversity of citizenship, and with a jury waived the cause was heard on stipulations of fact, depositions and exhibits. The determinative issue is whether the acts of the owner expressly or impliedly terminated the defendant-appellants' insurance prior to the fire.

Complete presentation of the issue depends on a close reading of the evidence, and this accuracy is found in the District Judge's statement of the subsidiary findings:

"3. The plaintiffs' policies were issued to Loton E. Tharpe, (hereinafter Tharpe) by one Eric Raymond Howard, an employee of the Industrial Insurance Agency in North Wilkesboro, North Carolina. The policies of the defendants, INA and ILM [Insurance Company of North America and Indiana Lumbermen's Mutual Insurance Company], were issued to Tharpe by one Shoun Leonard Kerbaugh (hereinafter Kerbaugh) of the Sentinel Insurance Agency in Wilkesboro, North Carolina, acting as agent for INA and ILM.

"4. In October of 1963, Kerbaugh placed split insurance coverage on certain property belonging to Loton Tharpe consisting of poultry houses, fixtures, equipment, and live poultry. Kerbaugh provided policies from the Berkshire Fire Insurance Company (hereinafter Berkshire) and defendant, ILM, each policy being in the amount of $22,500.00, and showing effective dates of October 11, 1963, through October 11, 1968, premiums to be paid annually. In February, 1965, Berkshire ceased doing business in the State of North Carolina, and sent out cancellation notices on all of its policies in this state. Kerbaugh replaced the Berkshire coverage on the Tharpe property on February 9, 1965, with policy number 18–68–95 issued by defendant, INA, in the amount of $22,500.00, which policy showed effective dates of February 10, 1965, through February 10, 1968, premiums to be paid annually. Kerbaugh paid the annual premium on the ILM policy on December 15, 1964, which paid that policy to October 11, 1965. Kerbaugh was to receive payment from Tharpe for the annual premium payments, having agreed to carry Tharpe until his chicken business got established. Tharpe had paid the premium for the prior year.

"5. Kerbaugh had also placed coverage with Berkshire on a small dwelling house occupied by Tharpe's parents. When Berkshire cancelled in February, 1965, Kerbaugh was unable to find replacement coverage on the dwelling house occupied by Tharpe's parents. On or about February 10, 1965, Tharpe called Kerbaugh by telephone, stating that he had received the cancellation notice from Berkshire on his parents' dwelling house, and inquiring as to why that policy had been cancelled. He asked Kerbaugh if Kerbaugh could replace the coverage on the dwelling house, and Kerbaugh told him that he could not. Tharpe then said to Kerbaugh that if he, Kerbaugh, couldn't cover his father's home, then he couldn't furnish the coverage on the chicken house either. Kerbaugh answered that such suited him just fine, and asked Tharpe to return the policies and he would cancel them. Tharpe said he would return the policies for cancellation just as soon as he could place the coverage on the chicken house with another agent. No definite cancellation date was given to Kerbaugh by Tharpe.

"6. Tharpe never returned the policies and never notified Kerbaugh prior to the loss that he had procured other coverage on the chicken house. The

INA and ILM policies were not cancelled by Kerbaugh or Sentinel Insurance Agency prior to the loss, nor were the defendant insurance companies notified of any cancellation prior to the loss. In fact, Kerbaugh paid the annual premium on the INA policy on April 15, 1965, approximately two months after the telephone conversation. Kerbaugh billed Tharpe for the premium on the policies on the first of every month, including March, April, and May, the month in which the loss occurred.

"7. Tharpe's chicken houses were destroyed by fire on May 13, 1965. After the fire, the loss was investigated by adjusters for INA and ILM, as well as adjusters for the plaintiffs herein.

"8. On June 29, 1965, Sentinel Insurance Agency, acting on behalf of INA and ILM, mailed out cancellation notices to Tharpe reciting that INA and ILM policies were cancelled as of May 21, 1965, some eight days after the fire. Similar cancellation notices were mailed out at the same date by Sentinel Insurance Agency, acting on behalf of INA and ILM, to The Northwestern Bank, as mortgagee of the property, reciting cancellation of the mortgagee agreement contained in the INA and ILM policies at the expiration of ten days from the receipt of the notices.

"9. Eric Raymond Howard, an employee of the Industrial Insurance Agency, is the agent who wrote the plaintiffs' policies to Tharpe. Tharpe called him by telephone in February, 1965, after he had called Kerbaugh, and within a day or so visited Howard's office concerning the procurement of insurance coverage on his chicken house to replace the defendants' coverage. Howard contacted the plaintiffs who sent out a special agent to examine the risk. After the special agent had examined the risk and the plaintiffs had confirmed that they would write the coverage, Howard notified Tharpe a couple of days prior to March 1, that he would effect the coverage March 1. Tharpe told him to go ahead and do so and he would contact the other agency and have the other policies cancelled as of March 1. Tharpe did not call Kerbaugh after this to cancel the defendants' policies."

The new policies were actually issued on March 1, 1965 in the face amount of $47,000.00 (the old policies totalling $45,000.00). The originals were sent to the mortgagee bank and copies to the insured.

The District Court's ultimate finding of subsisting protection by the defendant companies on the date of the fire cannot stand, we think, because the premise-findings do not justify it.[1] It seems clear that the owner did not intend to have the protection of four policies. It would have meant a doubling of the insurance he had previously carried, a total twice the amount he sought from the new insurers. If this were a suit by the owner to recover on the old policies as well as the new, surely he could not succeed as to all of them. His later insurers have no superior standing against the earlier underwriters. There is nothing to indicate that they insured in the belief that they were becoming merely co-insurers and their risk only a participation in an aggregate insurance of $92,000.00 (the sum of the old and new policies).

The subordinate findings, well anchored in the evidence, establish that the owner desired that the old insurance should terminate upon the procurement of the new. The owner deposed to this understanding on his part. While the appellants object to the finding that "no

---

[1] We are not here bound by the "clearly erroneous" concept of F.R.Civ.P. 52, for the ultimate finding of the lower Court was as much of law as of fact. Moreover, no evidence was presented the Court ore tenus. See Donaldson Publishing Co. v. Bregman, Vocco & Conn, Inc., 375 F.2d 639, 641 (2 Cir. 1967); Mamiye Bros. v. Barber S.S. Lines, Inc., 360 F.2d 774, 776–778 (2 Cir. 1966), cert. den. 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70; 5 Moore's Federal Practice ¶ 52.04.

definite cancellation date was given" to their agent by the owner, we think it unnecessary to resolve the correctness of this finding. The whole purport of the conversations between the owner and the agent reveals that the latter's policies were to cease upon the inception of the new contracts. This is the testimony of Howard who wrote the new policies for the plaintiffs.

True, after the claimed cancellation date of March 1, 1965 and after the fire —May 13, 1965—the defendants indulged in conduct evincing acknowledgment that their policies were still in effect. Kerbaugh, their agent, prepaid the annual premium on the INA policy in April 1965 and billed the owner on the first of March, April and May 1965 for the policy premiums. He also mailed out notices more than a month after the fire stating that the policies would be cancelled effective on a day which was more than a week after the fire. However, these acts are adequately explained as the result of customary office routine, rather than proof of a deliberate determination to keep the policies alive. In any event, we do not think they are of sufficient weight to override the general tenor of all the other circumstances that the effectiveness of the old polices would end upon issuance of the new.

For his decision the District Judge relied upon Baysdon v. Nationwide Mutual Fire Insurance Co., 259 N.C. 181, 130 S.E.2d 311 (1963). While the State law governs here, our conclusion does not deviate from this precedent. There the owner intended to cancel the prior insurance upon procurement of other insurance, but he never notified the first insurer of this intention. Consequently, the Court quite logically held the first insurance to continue in effect despite the acquirement of new insurance. Presently, the first insurers had been notified of the purpose of the owner to cancel as soon as he obtained other insurance. At best only the actual date of the procurement was not conveyed to the first insurers. Concededly, the substitute insurance was obtained on March 1, 1965,

thus bringing to a close the outstanding insurance. By the terms of the defendants' policies, the insured could cancel them at any time upon request. Hence no formal notice to the insurers was necessary.

The judgment of the District Court must be vacated and the case remanded with directions to enter an order exonerating the appellant-defendants from any liability to the plaintiff-appellees.

Vacated with directions.